1   **BUCKLEYSANDLER LLP**
    FREDRICK S. LEVIN (State Bar No. 187603)
2   *flevin@buckleysandler.com*
    100 Wilshire Boulevard, Suite 1000
3   Santa Monica, California 90401
    Telephone:  (310) 424-3900
4   Facsimile:  (310) 424-3960

5   Jennifer A. Slagle Peck (*pro hac vice*)
    *jslaglepeck@buckleysandler.com*
6   1250 24th Street NW, Suite 700
    Washington, DC 20037
7   Telephone:  (202) 349-8000
    Facsimile:  (202) 349-8080

8

9   *Attorneys for Ocwen Loan Servicing, LLC*
    *and Ocwen Financial Corporation*

10

11              **UNITED STATES DISTRICT COURT**

12      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14  SHANE VALDEZ, Individually and as        Case No. 2:14-cv-03595-CAS-MAN
    a Representative of the Class,
15                                           **OCWEN LOAN SERVICING, LLC'S**
                                             **AND OCWEN FINANCIAL**
                    Plaintiff,               **CORPORATION'S NOTICE OF**
16                                           **MOTION AND MOTION TO**
            v.                               **DISMISS**
17
    SAXON MORTGAGE SERVICES,                 [Filed Concurrently Herewith Declaration
18  INC., et al.,                            of Gina Feezer; and [Proposed] Order]

19                  Defendants.              Date:  September 29, 2014
20                                           Time:  10:00 a.m.
                                             Courtroom:  5, 2nd Floor
21                                           Judge:  Hon. Christina A. Snyder
                                             Mag. Judge:  Hon. Margaret A. Nagle
22

23

24

25

26

27

28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 a.m. on September 29, 2014, or as soon thereafter as the matter may be heard in Courtroom 5, 2nd Floor, of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, CA 90012, the Honorable Christina A. Snyder presiding, Defendants Ocwen Loan Servicing, LLC ("OLS")and Ocwen Financial Corporation ("OFC") will, and hereby do, move the Court pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6) to grant OLS's and OFC's Motion to Dismiss all of the claims asserted against them in Plaintiff's Class Action Complaint (Counts 1-2, 4-7).

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the attached declaration of Gina Feezer in support of OLS's and OFC's Motion to Dismiss, the declarations attached to American Security Insurance Company's contemporaneously filed Motion to Dismiss and its Request for Judicial Notice, the Complaint and its exhibits and documents referred to in the Complaint, and all other pleadings, documents, records, and other materials on file in this action, the oral arguments presented at the hearing of this motion, and any other material the Court permits.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 18, 2014.

Dated:  August 4, 2014                    Respectfully Submitted,

BUCKLEYSANDLER LLP

/s/ Fredrick S. Levin
Fredrick S. Levin (Bar No. 187603)

*Attorney for Ocwen Loan Servicing, LLC*
*and Ocwen Financial Corporation*

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

LEGAL STANDARD...................................................................................3

FACTS .........................................................................................................4

ARGUMENT ...............................................................................................7

I.     Plaintiff Lacks Standing Because He Never Paid LPI Premiums.........7

II.    Plaintiff's Claims are Barred by the Filed Rate Doctrine. ...................8

III.   In Any Event, the Complaint Should Be Dismissed for
       the Reasons Stated by the 7th, 10th, and 11th Circuits.........................9

       A.    The Appeals Courts All Have Dismissed
             Similar LPI Allegations. ..........................................................10

       B.    Plaintiff's "Kickback" Allegations Fail
             Because LPI was for Lender's Benefit. ....................................11

       C.    Plaintiff's Allegations of Fraud and Deception
             are Implausible Because the Consequences
             of LPI Were Disclosed.............................................................11

       D.    Plaintiff's Breach of Contract Claim Fails
             Because the Mortgage Contains No Language
             Proscribing Commissions or Other Fees. .................................12

IV.    The Complaint Should Also be Dismissed
       for Independent Reasons. ....................................................................14

       A.    The Complaint Fails to Plead Viable RICO Claims.................14

             1.    OLS Did Not Engage in the Conduct of an Enterprise. .15

             2.    Plaintiff Fails to Allege Any RICO Predicate Acts........16

             3.    No Injury in Fact, Causation or Damages. ....................18

             4.    Plaintiff's Derivate RICO Conspiracy
                   Claim Also Fails. ..........................................................18

       B.    Plaintiff's Breach of Contract Claim Fails
             Under California Law. ..............................................................18

             1.    Plaintiff's Contract Permits the Alleged Conduct..........18

2.    Plaintiff's Implied Covenant Claim Fails Because His Allegations are Implausible. ....................20

C.    Plaintiff's Unjust Enrichment Claim Fails...............................21

D.    Plaintiff's Allegations Under Section 17200 Fail to State a Claim. ..........................................................22

E.    Claim for Declaratory and Injunctive Relief Should be Dismissed. ...............................................24

V.    Claims Against OFC Fail Because of Improper Group Pleading and For the Reasons the Claims Against OLS Fail..............25

CONCLUSION ......................................................................................25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abels v. JPMorgan Chase Bank, N.A.*,
   678 F. Supp. 2d 1273 (S.D. Fla. 2009)...................................................9

*Alan Neuman Prods., Inc. v. Albright*,
   862 F.2d 1388 (9th Cir. 1988) ...........................................................16

*Anapoell v. Am. Express Bus. Fin. Corp.*,
   2008 WL 2225849 (D. Utah 2008),
   *aff'd*, 2009 WL 766532 (10th Cir. Mar. 24, 2009).....................................passim

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ..............................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................... 3, 4, 16

*Barrous v. BP P.L.C.*,
   2010 WL 4024774 (N.D. Cal. Oct. 13, 2010).......................................19

*Berger v. Home Depot U.S.A., Inc.*,
   476 F. Supp. 2d 1174 (C.D. Cal. 2007)....................................... 20, 21

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) .........................................................................18

*Cannon v. Wells Fargo Bank, N.A.*,
   2012 WL 3388222 (N.D. Cal. July 5, 2013)........................................13

*Chaset v. Fleer/Skybox Int'l, LP*,
   300 F.3d 1083 (9th Cir. 2002)..........................................................15

*Cohen v. Am. Sec. Ins. Co.*,
   735 F.3d 601 (7th Cir. 2013) ..................................................... passim

*DeCambaliza v. QBE Holdings, Inc.*,
   2013 WL 5777294 (W.D. Wis. Oct. 25, 2013) .......................................9

*Desoto v. Condon*,
   371 F. App'x 822 (9th Cir. 2010)......................................................16

*Eclectic Prop. East, LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................16

*Faili v. BAC Home Loans Servicing LP*,
   2014 WL 255704 (C.D. Cal. Jan. 23, 2014)........................................24

*Feaz v. Wells Fargo Bank, N.A.*,
   745 F.3d 1098 (11th Cir. 2014)................................................. passim

*Gerlinger v. Amazon.com Inc.*,
  526 F.3d 1253 (9th Cir. 2008)................................................................7

*Gomez v. Wachovia Mortg. Corp.*,
  2010 WL 291817 (N.D. Cal. Jan. 19, 2010) ......................................24

*Gonzales v. Planned Parenthood of Los Angeles*,
  2011 WL 1481398 (C.D. Cal. Apr. 19, 2011)....................................25

*Gustafson v. BAC Home Loans Servicing, LP*,
  2012 WL 4761733 (C.D. Cal. Apr. 12, 2012)....................................22

*Gustafson v. BAC Home Loans Servicing, LP*,
  2012 WL 7051318 (C.D. Cal. Dec. 20, 2012) ............................ 17, 24

*Hill v. Roll Int'l Corp.*,
  195 Cal. App. 4th 1295 (Cal. Ct. App. 2011) ....................................21

*Howard v. Am. Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000) ..............................................................18

*Kowalsky v. Hewlett-Packard Co.*,
  771 F. Supp. 2d 1156 (N.D. Cal. 2011) ..............................................22

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005),
  *aff'd*, 252 F. App'x 777 (9th Cir. 2007) ............................................22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..............................................................................7

*Morales v. Attorneys' Title Ins. Fund, Inc.*,
  983 F. Supp. 1418 (S.D. Fla. 1997)......................................................8

*No Cost Conference, Inc. v. Windstream Commc'ns.*,
  940 F. Supp. 2d 1285 (C.D. Cal. 2013)...............................................25

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F. 3d 1151 (9th Cir. 1996)..............................................................22

*Pirozzi v. Apple, Inc.*,
  966 F. Supp. 2d 909 (N.D. Cal. 2013) ................................................21

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ............................................................................15

*Rivera v. BAC Home Loans Servicing, L.P.*,
  756 F. Supp. 2d 1193 (N.D. Cal. 2010) ..............................................23

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
  72 Cal. App. 4th 861 (Cal. Ct. App. 1999) .........................................24

*Salkin v. United Servcs. Auto. Ass'n*,
  767 F. Supp. 2d 1062 (C.D. Cal. 2011) ...............................................25

*In re Sony Grand Wega KDF-E A10/A20 Series*
  *Rear Projection HDTV Television Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...............................................23

*St. Clair v. City of Chico*,
  880 F.2d 199 (9th Cir. 1989) ...............................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .............................................................................5

*Thomas v. Mundell*,
  572 F.3d 756 (9th Cir. 2009) ...............................................................7

*Vogan v. Wells Fargo Bank, N.A.*,
  2011 WL 5826016 (E.D. Cal. Nov. 17, 2011) ...................................24

*Wah Chang v. Duke Energy Trading & Mktg., LLC*,
  507 F.3d 1222 (9th Cir. 2007) ............................................................8

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ............................................................8

*Wegoland Ltd. v. NYNEX Corp.*,
  27 F.3d 17 (2d Cir. 1994) ...................................................................8

*Weinberger v. Mellon Mortg. Co.*,
  1998 WL 599192 (E.D. Pa. Sept. 10, 1998) ......................................17

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) ...............................................................3

**Statutes**
Cal. Ins. Code § 1858.07 ...........................................................................9

Cal. Ins. Code § 1860.1 .............................................................................9

Cal. Ins. Code § 1861.05 ...........................................................................8

**Other Authorities**
John M. Flynt, *A Solution to Force-Placed Insurance Litig. for Lenders:*
  *Disclosure and Arbitration*,
  26 Cumb. L. Rev. 537 (1996) ..............................................................4

Plaintiff, Shane Valdez, brings this putative class action challenging supposedly "inflated" and "expensive" premiums for hazard lender-placed insurance ("LPI") that was purchased after, as Plaintiff concedes, he failed to maintain his own hazard insurance as required by his mortgage. Based on the unambiguous mortgage terms and the admitted facts of the Complaint, Plaintiff's claims should be dismissed. *See* Complaint ("Compl."), ECF No. 1, May 9, 2014.

As discussed in Parts I-IV below, the claims against Ocwen Loan Servicing, LLC ("OLS") fails under Rules 12(b)(1) and 12(b)(6) for lack of standing and failure to state a claim.

First, Plaintiff lacks standing. While the crux of Plaintiff's Complaint is that he was somehow injured by the cost of the LPI, Plaintiff does not actually allege that he ever paid for the LPI obtained by OLS. Instead, Plaintiff insinuates that the premiums were charged to his escrow account, and then admits that his loan was modified and his principal balance reduced. Plaintiff's transaction history confirms that he never paid, and no longer owes, OLS for the LPI premiums. Thus, Plaintiff has suffered no injury and this Court lacks subject matter jurisdiction.

Second, there is nothing "inflated" or unreasonable about Plaintiff's LPI charges; the rates were filed with and approved by the California Department of Insurance ("DOI"). Thus, the filed rate doctrine bars Plaintiff's claims.

Third, even if the filed rate doctrine is not a bar, there are no actionable claims alleged. The United States Courts of Appeals for the Seventh, Tenth, and Eleventh Circuits have examined strikingly similar complaints and dismissed them all as a matter of law. There are no contrary appellate decisions. In particular, all three Circuits found that the borrowers' contract claims failed because the mortgages unambiguously permit the servicer to recover from the borrower the premium charged for LPI coverage when borrowers fail to maintain their own insurance. They found plaintiffs' claims based on bad faith, deception, and fraud to be implausible for the simple reason that the lenders or servicers clearly and fully

1

disclosed to the borrower the consequences of failing to maintain their own insurance, including the significantly higher cost of LPI, and provided ample notice and opportunity for the borrowers to avoid the LPI. And they dismissed as implausible plaintiffs' characterization of alleged payments to lenders or servicers as "kickbacks." In particular, the Courts held that the "defining characteristic" of a "kickback" is divided loyalty, but no such divided loyalty was pled.

Plaintiff's Complaint fails under this unbroken chain of appellate authority because it pleads no facts establishing divided loyalty. Rather, Plaintiff's mortgage and the LPI letters fully and clearly disclosed the adverse consequences of his failure to maintain insurance, including that the cost of LPI would "significantly exceed" and be "much higher" than the cost of insurance he could obtain himself. And Plaintiff received repeated, urgently-worded letters describing in detail the reasons why LPI was decidedly not in his interest and "strongly recommend[ing]" against it. In these letters, OLS informed Plaintiff of the date the LPI would be effective and the cost of the LPI, and repeatedly explained how Plaintiff could, at any time, cancel the LPI and receive a refund of the unearned portion of the premium. As the Seventh Circuit held, these circumstances "conclusively defeat any claim of fraud . . . concealment, or misrepresentation." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 608 (7th Cir. 2013). Further, they defeat Plaintiff's contract-based claims because Plaintiff's mortgage "unambiguously contemplated" that he would be charged for the entire LPI premium. *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1110 (11th Cir. 2014). While there has been conflict among district courts regarding similar LPI claims, no such conflict exists at the appellate level.

Fourth, Plaintiff's claims fail for further count-specific reasons including the fact that he has not plausibly alleged that the LPI obtained by OLS was unnecessary. Plaintiff's allegation that his LPI coverage amount exceeded the lender's interest in his property fails because, as other courts have concluded, a lender's interest is not limited to the unpaid principal balance of the loan.

Moreover, Plaintiff does not allege his LPI coverage amount was above his unpaid principal balance at the time OLS obtained it. And, Plaintiff's vague allegation that a standard mortgage clause provides a lender with coverage beyond the cancellation date is misplaced against OLS. Plaintiff alleges that he already had LPI insurance at the time OLS placed insurance; he has not, and cannot, allege that this prior LPI insurance included a standard mortgage clause to extend coverage.[1]

Additionally, as discussed in Part V below, Plaintiff's claims against OFC fail for the same reasons as stated by OLS. The claims also fail for the additional reason that Plaintiff has not alleged any connection whatsoever to OFC. Instead, Plaintiff has merely, and improperly, defined OLS and OFC, two entirely separate entities, as "Ocwen" and by this device imputed OLS's purported wrongdoing to OFC. Such lumping is insufficient under Rules 8, 9(b), and 12(b).

## **LEGAL STANDARD**

To resolve a facial attack on jurisdiction under Rule 12(b)(1), a court reviews the complaint to determine if a plaintiff's allegations are sufficient to invoke federal jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). To resolve a factual attack, a court may review evidence beyond the complaint. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). Thereafter, plaintiff bears the burden of establishing subject matter jurisdiction. *Id.*

To survive a motion under Rule 12(b)(6), a complaint must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts that are 'merely consistent with' a defendant's

---

[1] Further, OLS and OFC join in American Security Insurance Company's ("ASIC") argument that the Complaint should be dismissed for failure to include Valdez's wife, a necessary party. *See* ASIC Mot. to Dismiss, August 4, 2014, at Part IV.

OLS'S AND OFC'S NOTICE OF MOTION AND MOTION TO DISMISS

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'" requiring dismissal under Rules 8 and 12(b)(6). *Id.*

## FACTS

**PLAINTIFF'S MORTGAGE AND LPI.** In 2007, Plaintiff obtained two mortgages from New Century Mortgage Corp. for $592,000 and $148,000. Compl. ¶¶ 70, 77-78 & Ex. 15. Plaintiff does not dispute that under his mortgages he was required to, but failed, to maintain continuous hazard insurance on his property. Compl. ¶¶ 71-72, 74. Nor does he dispute that his servicer had a right to obtain insurance in light of this failure. Compl. ¶ 71. This insurance, known as LPI or force-placed insurance, protects the lender by increasing its "ability to recover the outstanding balance of the loan in the event of injury or loss to the collateral supporting the loan." John M. Flynt, *A Solution to Force-Placed Insurance Litig. for Lenders: Disclosure and Arbitration*, 26 Cumb. L. Rev. 537, 539 (1996).

Plaintiff alleges that before May 2011, his mortgage servicer, Saxon Mortgage Services, Inc. ("Saxon"), obtained LPI on his property when he failed to maintain his own coverage. Compl. ¶¶ 74, 82, 84. On May 16, 2011, the servicing rights of Plaintiff's mortgage—not the mortgage itself—were transferred to OLS. Compl. ¶ 101. OLS obtained LPI between May 2011 and June 2013 with coverage amounts between $506,250 and $528,745. *See* Compl. ¶¶ 110, 115, 124. Plaintiff does not allege the coverage was more than the value of the property or more than his unpaid principal balance at the time the coverage was placed. *See* Compl. ¶ 127 (alleging loan was modified after LPI was placed). And he does not allege he had his own insurance before May 2011 that either (1) could have been extended, or (2) provided the lender coverage past the date of cancellation. Moreover, Plaintiff does not allege that he actually paid, or still owes, the LPI premiums.

**OLS CLEARLY AND FULLY WARNED PLAINTIFF OF THE CONSEQUENCES OF FAILING TO OBTAIN INSURANCE.** Plaintiff alleges that on October 1, 2011 he received the first of three "cycle" letters notifying him that his insurance (the LPI

obtained by Saxon) had lapsed on May 17, 2011. *See* Compl. ¶ 103 & Ex. 22; Wilson Decl., Ex. A, p. 1.[2] The letter notified Valdez that OLS did not have proof of insurance and that "[w]e must receive evidence of the continuation of your insurance coverage as soon as possible." It reminded him, in bold text, of his obligation to maintain insurance and the consequences of failing to do so:

> Your loan agreement requires you to maintain hazard insurance covering you home. * * * If you fail to maintain this insurance . . . we may purchase hazard insurance beginning from the date of lapse, based on the amount of coverage you provided on your previous insurance policy, if available, and charge you for the cost of the insurance. The cost of the insurance we purchase is likely to be *much higher* than the cost of insurance you could obtain on your own.

Wilson Decl., Ex. A *(*bold removed; italics added). The letter further advised:

> . . . **[o]btaining your own insurance is in your best interest**. You have the right to purchase insurance from the insurance company of your choice. If you do not have a current policy . . . **please contact your agent or carrier and purchase coverage**.

*Id*. The letter then spelled out in bullet-point fashion the reasons Valdez would not want LPI over homeowners' insurance he could obtain in the open market: (a) "the Cost of premium may be **much** higher," (b) "the coverage provided may be **less**," (c) it "**[d]oes not** protect you against injuries that occur on your property," and (d) it "**[d]oes not** protect your personal property. . . ." The letter advises that it is "extremely important that we receive [proof of your own insurance] . . ."

On November 5, 2011, Valdez received another letter alerting him that OLS had not received proof of insurance. Compl. ¶ 105; Wilson Decl., Ex. B. The letter repeated in even stronger and more detailed terms all of the bolded and bulleted warnings of the October letter and stated in bold: "**We strongly recommend that**

---

[2] Where a complaint refers to a document either explicitly or implicitly, the Court may properly consider the documents to resolve a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, the Complaint explicitly refers to each of the LPI letters attached to the Wilson Declaration filed with ASIC's motion, *see* ECF No. 70, and includes some pages of some of the letters as exhibits. *See, e.g.*, Compl. ¶¶ 103-121 & Exs. 22-28. Thus, the Court may consider the letters. OLS also joins in ASIC's request for judicial notice of the applicable rate filings and DOI approval order (ECF No. 71). See *Tellabs* at 322.

**you obtain your own insurance coverage.**" The letter also advised that "[b]ecause we did not receive proof of acceptable coverage," OLS secured a temporary, 60-day binder and enclosed the binder from ASIC with annual premium of $3,402. The letter disclosed that OLS incurred expenses in placing the policy and that "part of the policy premium charged to your escrow account may be used by the insurance carrier to reimburse us for these expenses." The letter warned that a one-year policy would be obtained "[i]f you do not give us proof that you have coverage."

On December 10, 2011, Valdez received a third letter. Compl. ¶ 109; Wilson Decl., Ex. C. The letter said "[i]t appears that you do not have insurance. . . . We have previously sent you two notices . . . but we have no record of a response from you." The letter repeated the bolded and bulleted warnings and the disclosure that part of the premium may reimburse OLS's expenses. And it said that "[t]hirty days from the date of this letter, we will charge your escrow account $3,402 for insurance coverage if you do not provide acceptable proof of coverage. . . ."

On January 21, 2012, Valdez received yet another letter advising that OLS had not yet received proof of insurance and, as result, OLS had placed a one-year LPI policy and charged the premium to his escrow account. Compl. ¶ 110; Wilson Decl., Ex. D. The letter enclosed a copy of Plaintiff's insurance policy and once again reminded him that "**[a]ny policy we purchase . . . may be canceled at any time by giving us acceptable proof of other insurance** . . . You will only be charged for the days that this policy was needed." The insurance policy plainly discloses the premium for the insurance, which was the same as the prior notices.

Beginning in May 2012, OLS sent Plaintiff a series of letters reminding him of his obligation to maintain insurance and warning him that if he did not provide proof of coverage, the LPI coverage scheduled to expire on May 17, 2012 would be renewed for another year. Compl. ¶ 114; Wilson Decl., Exs. E-F. The letters contained the same warnings as the 2011 letters and urged Valdez to obtain his

own coverage. When no response was received, the LPI coverage was renewed. Wilson Decl., Ex. G. A year later, in April 2013, another set of reminder letters were sent, and when Valdez again did not provide proof of insurance, the LPI coverage was renewed. Compl. ¶¶ 118-199, 121; Wilson Decl., Exs. H-J.

The gravamen of the Complaint is that OLS purchased excessively-priced LPI and received undisclosed "kickbacks" as part of the premium charged by ASIC. *See, e.g.*, Compl., ¶ 3 (kickbacks paid to OLS); ¶ 10 ("unjustified and unfairly inflated charges" for LPI); ¶ 18(j) (LPI "inflated by expenses unrelated to the provision of the insurance"); ¶ 60 ("the premium includes a commission to the lender"); ¶ 61 (cost of LPI is "significantly excessive"); ¶ 159 ("FPI premiums incorporate the payment of such kickbacks"); ¶ 210 (injury is being "charged falsely inflated, unauthorized insurance charges"); ¶ 223 (injury is "fraudulently inflated charges"). Plaintiff seeks to "recoup" the portion of the LPI premiums that were "kickbacks." Compl. ¶¶ 211, 282(k) (seeking to reverse LPI charges). Indeed, the only alleged injury is the LPI premiums.

**ARGUMENT**

**I.    Plaintiff Lacks Standing Because He Never Paid LPI Premiums.**

Article III standing is a "jurisdictional prerequisite to the consideration of any federal claim." *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008). A plaintiff must demonstrate injury-in-fact, causation, and redressability. *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009). The alleged injury must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiff's alleged injury is the LPI premiums. *See, e.g.*, Compl. ¶ 282(K) (seeking injunction to reverse "improper charges" for LPI). But Plaintiff does not allege he ever paid, or still owes, the premiums. Instead, he alleges that OLS obtained LPI on his property on three occasions and that one letter he received from OLS stated that his escrow account "will be charged" for the LPI premium.

7

Compl. ¶¶ 110, 114, 121. Even assuming that his escrow account was charged for all three years' of LPI premiums, Plaintiff does not allege that he ever made a mortgage payment after LPI was obtained or that he paid any portion of the premiums. Plaintiff's lack of standing is also clear from his transaction history, analyzed in the Declaration of Gina Feezer ("Feezer Decl."), which establishes that Plaintiff did not make any payments after OLS placed LPI in January 2012, and his negative escrow balance from the LPI premiums was written off in his loan modification. Thus, the claims should be dismissed under Rule 12(b)(1). *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

## II.    Plaintiff's Claims are Barred by the Filed Rate Doctrine.

Plaintiff's Complaint also is barred by the filed rate doctrine. The filed rate doctrine "holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994). Courts have repeatedly recognized the doctrine as a valid defense under California law. *See, e.g.*, *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1226 (9th Cir. 2007) (declining to analyze filed rates). The doctrine bars claims that premiums are excessive because the insurer paid kickbacks or otherwise incurred improper expenses that increased the rate. *See, e.g.*, *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1426 (S.D. Fla. 1997) (claims that kickbacks resulted in excessive premiums barred by filed rate doctrine).

Plaintiff's claims implicate the doctrine because they dispute what the DOI determined—that the rates are not "excessive, inadequate, unfairly discriminatory or otherwise in violation of th[e Insurance Code]." Cal. Ins. Code § 1861.05(a).[3] Indeed, the central premise of the Complaint is that the approved rate does not constitute the true cost of the insurance because "a percentage of borrowers' premiums are not actually being paid to cover actual risk, but are simply funding

---

[3] *See* Wilson Decl. ¶¶ 18-23, Exs. K, L.

illegal kickbacks," Compl. ¶ 159, and thus, were not "commercially reasonable." *See e.g.*, Compl. ¶¶ 8, 281(e). To the contrary, by law, the approved rate is the "true cost" and is "commercially reasonable" and the doctrine bars any effort to recover the difference between what Plaintiff asserts is the "true cost" and the approved rate. *See* Cal. Ins. Code § 1858.07 (precluding insurance company from charging any rate other than the approved rate); *id.* § 1860.1 (charging the filed rates cannot "constitute . . . grounds for prosecution or civil proceedings . . . .").

Plaintiff does not allege that his premium was inconsistent with the filed rate; instead, he seeks to recover the portions of the rate he believes was "inflated." Compl. ¶ 282(K). Accordingly, the Court should find, as others have found, that this second-guessing of the DOI is barred.[4]

## III.    In Any Event, the Complaint Should Be Dismissed for the Reasons Stated by the 7th, 10th, and 11th Circuits.

Plaintiff alleges that Saxon and OLS embedded LPI premiums with "kickbacks" unrelated to the cost of the insurance. *See, e.g.*, Compl. ¶¶ 159, 180. The Seventh, Tenth, and Eleventh Circuits reviewed nearly identical allegations and dismissed them for three principal reasons. First, the contracts did not prohibit the lender or servicer from receiving a fee or commission for placing LPI. Second, the "kickback" allegations were not plausible. Finally, the effect of LPI, including its higher cost, was disclosed. Plaintiff's Complaint also fails for these reasons.

---

[4] *See, e.g.*, *DeCambaliza v. QBE Holdings, Inc.*, 2013 WL 5777294, at *7 (W.D. Wis. Oct. 25, 2013) (dismissing LPI claims under filed rate doctrine). District courts reaching the opposite conclusion have focused incorrectly on the characterization of the claim. *See, e.g.*, *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009) (asserting claims challenge the manipulation of the insurance market). This distinction is "illusory" because the claims "necessarily implicate[] the reasonableness of the filed rates." *DeCambaliza*, 2013 WL 5777294, at *7. Thus, the Second Circuit recently certified for review a decision declining to apply the doctrine based on this incorrect theory. *Rothstein v. GMAC Mortg., LLC*, No. 14-1112 (2d Cir. filed June 25, 2014), ECF No. 34.

### A.    The Appeals Courts All Have Dismissed Similar LPI Allegations.

In *Cohen*, the Seventh Circuit examined the mortgage language and cycle letters and found that "[n]othing in the loan agreement and related documents prohibits [the lender] and its insurance-agency affiliate from receiving a fee or commission when [LPI] becomes necessary." *Cohen*, 735 F.3d at 612. It also rejected Plaintiff's characterization of such payments as "kickbacks." It noted that the defining characteristic of a "kickback" is divided loyalty. *Id*. at 611. The Seventh Circuit found no such divided loyalties in *Cohen*. The mortgage and notices sent to Plaintiff made it clear that the insurance requirement was for the "the lender's protection," not borrower's. Under these facts, "use of the pejorative term 'kickback' is not meaningful." It held further that the:

> [Lender]'s various notices and disclosures clearly warned [Plaintiff] that lender-placed insurance could cost up to five times more than a borrower's self-purchased policy. The bank continuously reminded her that she could avoid this expensive alternative by restoring her own insurance coverage for the property—even retroactively—and receive a pro rata refund of the lender-placed insurance premium.

*Id*. at 612. These facts precluded any claim the servicer breached the mortgage or the implied covenant of good faith, violated the Illinois Consumer Fraud Act, or engaged in common law fraud, unjust enrichment, or conspiracy. *Id*. at 611-16.

The Eleventh Circuit embraced *Cohen* in *Feaz*, 745 F.3d at 1111, and found that "'simply calling a commission a kickback doesn't make it one'" in the absence of facts demonstrating divided loyalties. *Id*. at 1110-11 (quoting *Cohen*). Like the Seventh Circuit, the Eleventh Circuit found no divided loyalties because the insurance requirement was clearly for "the lender's protection." *Id*. at 1111. It also agreed that disclosure of LPI's "higher costs" defeated a fraud claim. *Id*. at 1110.

The Tenth Circuit also rejected the central thesis of Plaintiff's claims in *Anapoell v. Am. Express Bus. Fin. Corp.*, 2008 WL 2225849 (D. Utah May 28, 2008), *aff'd*, 2009 WL 766532, at \*2 (10th Cir. Mar. 24, 2009). Anapoell brought a putative California class action for breach of an uniform equipment lease because the monthly premium for LPI "include[d] amounts over the true insurance

premium . . . [and] Defendants (or their alter ago affiliates) receive[d] payments . . . under the guise of reinsurance cessations, service fees, commissions or rebates with no corresponding costs or risk." 2009 WL 766532, at *2. Like the other Circuits, the Tenth Circuit rejected the "kickback" allegations as "conclusory" and found that the security agreement unambiguously permitted defendant "without limitation or qualification, to obtain insurance upon [borrower's] failure to do so and to charge [borrower] for the expense of obtaining the insurance . . ." *Id*. at *4. The Tenth Circuit rejected any suggestion that the agreement meant that defendants may only "'pass on' their actual insurance-related expense." *Id* at *6.

**B.    Plaintiff's "Kickback" Allegations Fail Because LPI was for Lender's Benefit.**

As in *Cohen* and *Feaz*, the Complaint fails to plead facts establishing divided loyalty because the insurance requirement was for the lender's protection:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, *at Lender's option . . . . Lender is under no obligation to purchase any particular type or amount of coverage.* Therefore, such coverage *shall cover Lender, but might or might not protect Borrower. . . .* Borrower acknowledges that the *cost of the insurance coverage* so obtained *might significantly exceed the cost of insurance that Borrower could have obtained.* * * * All insurance policies required by Lender . . . shall be subject to *Lender's right to disapprove such policies . . . . Lender shall have the right to hold the policies and renewal certificates.*

Compl. Ex. 15 at ¶ 5 (emphasis added). And the letters sent to Plaintiff state that the LPI "may provide benefits to you, but is primarily for the benefit of the owner of your mortgage loan." *See, e.g.*, Wilson Decl. Ex. B. The Seventh and Eleventh Circuits construed nearly identical language and found that the lenders were acting for their own benefit. *Cohen*, 735 F.3d at 611-12; *Feaz*, 745 F.3d at 1110. Accordingly, Plaintiff's conclusory "kickback" allegations are implausible.

**C.    Plaintiff's Allegations of Fraud and Deception are Implausible Because the Consequences of LPI Were Disclosed.**

As in *Cohen* and *Feaz*, OLS fully and clearly disclosed to Plaintiff the consequences of failing to obtain insurance. Plaintiff's mortgage states that the

Lender "may obtain insurance coverage" at his "expense" and the cost of the insurance coverage so obtained" might "significantly exceed" the cost for insurance that Plaintiff could obtain for himself. Compl. Ex. 15 at ¶ 5. And the cycle letters clearly and repeatedly spelled out the consequences of failing to maintain insurance. *See, e.g.*, Wilson Decl. Ex. A ("**we may purchase hazard insurance beginning from the date of lapse, based on the amount of coverage you provided on your previous insurance policy**" and "[t]he Cost of the premium may be **much** higher"); Ex. C ("**The cost of the hazard insurance we obtained is likely much higher than insurance you can obtain on your own.**"). OLS also advised Plaintiff that it (or an affiliate) may receive and retain a portion of the insurance premium. *See, e.g.*, Wilson Decl. Ex. B ("Part of the policy premium charged to our escrow account may be used by the insurance carrier to reimburse us for these expenses."). And the cycle letters repeatedly informed Plaintiff that the coverage available under LPI insurance might not be as good for him as insurance he could obtain on his own. *See, e.g.*, *id*.

For these reasons, every single letter requested that Plaintiff provide proof of insurance to avoid LPI and the letters "**strongly recommended**" that Plaintiff obtain his own coverage. OLS also disclosed the LPI premium, explained how to avoid paying the premium and how to cancel LPI, and provided ample time for him to obtain other insurance. Wilson Decl. Exs. A-J.

Under *Cohen* and *Feaz*, these disclosures "conclusively defeat" Plaintiff's fraud-based claims. *See Cohen*, 735 F.3d at 608; *Feaz*, 745 F.3d at 1111.

**D.    Plaintiff's Breach of Contract Claim Fails Because the Mortgage Contains No Language Proscribing Commissions or Other Fees.**

Once the pejorative label of "kickback" is properly ignored, the contract question becomes whether the mortgage proscribes receipt of fees or commissions. The Circuits each held that there is no such proscription: "Nothing prohibits Wachovia and its insurance-agency affiliate from receiving a fee or commission

when [LPI] becomes necessary." *Cohen*, 735 F.3d at 612. Further, the Circuits addressed and rejected each of Plaintiff's specific contract theories.

*First*, the Eleventh Circuit held that excessive coverage allegations did not state a claim of breach of contract or breach of the implied covenant. *Feaz*, 745 F. 3d, 1109-10. The court concluded that a lender has the unambiguous right under the contract to require insurance coverage up to the full replacement cost of the property and that the coverage need not be limited to the unpaid principal balance because the lender has an interest in the maintenance of the loan and in repairing the property should it be damaged. *Id*. at 1106-07. As a result, Plaintiff's excessive coverage allegations fail. Compl. ¶¶ 261-262.

*Second*, the Seventh Circuit held that "backdating"—the placing of continuous coverage from the date of lapse—is permitted by the plain language of the mortgage. *Cohen*, 735 F.3d at 613. Further, Plaintiff was repeatedly warned that if he failed to obtain insurance, the effective date of the LPI would be the date his prior coverage lapsed. Wilson Decl. Exs. A-J. Thus, Plaintiff's backdating allegations fail. Compl. ¶¶ 111, 115, 252; *see Cannon v. Wells Fargo Bank, N.A.*, 2012 WL 3388222, at *4-6 (N.D. Cal. July 5, 2013) (concluding the mortgage permitted LPI to be "backdated" to the date the prior coverage lapsed).[5]

*Third*, the Tenth Circuit rejected any argument that OLS breached the mortgage by seeking to recover the LPI premium. Like Plaintiff, Anapoell argued that the LPI premium was embedded with "grossly excessive fees" that were "disguised profits." *Anapoell*, 2009 WL 766532, at *3. And Anapoell asserted that the alleged disguised profit was not part of the "true insurance premium" that could be recovered from the borrower. *Id.*  at *2. The Tenth Circuit rejected this attempt

---

[5] Moreover, "backdating" is a misnomer as the Complaint does not allege that ASIC charged the premium for a period in which it had assumed no contractual risk of loss. A premium is earned so long as the insurer was at contractual risk of loss even if there was no actual loss. Absent allegations that ASIC had no risk of loss, the claim of "backdating" provides no plausible inference of wrongdoing.

to distinguish between the premium charged and an alleged, hypothetical "true premium," and held that the security instrument was "unambiguous" and permitted recovery from Anapoell of the premium charged by the insurer "without limitation or qualification." *Id.* at *3.

*Further*, the Tenth Circuit held that the implied covenant of good faith did not limit the defendant's ability to recover the premium charged by the insurer. To the contrary, "[Plaintiff's contention] attempts to establish new, independent rights or duties not agreed upon by the parties–namely, an unwritten requirement that Defendants may only 'pass on' their actual insurance-related expenses." *Id*. The court recognized that the implied covenant exists, in part, to limit the unfettered discretion of one party to a contract. But the Tenth Circuit found that the fact-pattern alleged did not create such a situation. Rather, the "express terms of the [the insurance requirement] imposed a limitation on Defendant's exercise of discretion." *Id*. at *4. That is, Anapoell could have eliminated the defendant's discretion to place insurance simply by exercising his contractual right to obtain his own insurance. Likewise here: Plaintiff could have eliminated OLS's discretion by exercising his right to obtain his own insurance. The Seventh Circuit reached the same conclusion because "[t]he bank continuously reminded [plaintiff] that she could avoid this expensive alternative by restoring her own insurance coverage." *Cohen*, 735 F.3d at 612; *see Feaz*, 745 F.3d at 1110 (noting that the letters gave plaintiff "ample opportunity to avoid the higher-cost [LPI] and warned her about the cost"). The bank's repeated reminders and disclosures rendered implausible any claim of bad faith. *Cohen*, 735 F.3d at 612. The same is true here.

## IV.   The Complaint Should Also be Dismissed for Independent Reasons.

### A.   The Complaint Fails to Plead Viable RICO Claims.

Plaintiff asserts civil RICO claims against OLS based on alleged predicate acts of mail and wire fraud, including "honest services" fraud, and extortion. Each is based on the allegation that OLS received "kickbacks" and defrauded borrowers

by not disclosing those kickbacks in the numerous letters warning him to avoid LPI. Compl. ¶¶ 186, 202. The claims hinge on the allegation that the information provided to Plaintiff was meant to "induce" him to accept and pay for LPI. Compl. ¶¶ 180, 203. These claims fail for the reasons stated by the Seventh, Tenth, and Eleventh Circuits. Additionally, the claims should be dismissed for failure to plead (1) that OLS participated in the conduct of an enterprise, (2) sufficient predicate acts, (3) injury in fact, causation, and damages, and (4) a conspiracy.[6]

### 1.    OLS Did Not Engage in the Conduct of an Enterprise.

To state a civil RICO claim, a plaintiff must allege the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" and that defendant's conduct caused plaintiff's injuries. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002). To allege the conduct of an enterprise, defendant must "have some part in directing" the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). This requires participation in the "operation or management of the enterprise itself" by "upper management" or "lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 183-84. Outsiders may meet this requirement if they "exert control over" the enterprise and have "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 184-85.

Plaintiff has failed to allege that OLS had any part in directing the alleged enterprise's affairs. The most he alleges is that the "Servicing Defendants" (not OLS in particular) "were associated for the common purpose of defrauding borrowers and loan owners by overcharging them for FPI." Compl. ¶ 180. Plaintiff does not allege any specific action by OLS that amounts to directing the enterprise's affairs. Indeed, the only alleged actions by OLS are that, in servicing Plaintiff's loan, OLS arranged for LPI to protect the property after Plaintiff ignored

---

[6] OLS also joins ASIC's argument that Plaintiff's RICO claims fail for lack of sufficient allegations of a RICO enterprise. *See* ASIC Mot. to Dismiss at Part V.A.

the multiple warnings sent to him. *See* Compl. ¶ 183; *see also id.* ¶¶ 101, 103, 105, 109-110, 114-115, 118-121. This activity is nothing more than OLS conducting its own affairs, not the affairs of an enterprise, and thus is insufficient to state a claim.

## 2. Plaintiff Fails to Allege Any RICO Predicate Acts.

Where fraud or extortion is alleged as predicate acts, the complaint must comply with the plausibility criteria articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Iqbal* and Rule 9(b)'s heightened pleading standard. *See Desoto v. Condon*, 371 F. App'x 822, 824 (9th Cir. 2010); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988); (applying 9(b) standard to extortion claim). Further, where, as here, the alleged enterprise participants are merely "[a]cting as routine participants in American commerce," a more "significant level of factual specificity is required to allow a court to infer reasonably that such is plausibly part of a fraudulent scheme." *Eclectic Prop. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014). Plaintiff's RICO claims fail to meet this standard.

Plaintiff's extortion allegations are insufficient because they are conclusory and implausible. Plaintiff alleges that the Servicing Defendants used or conspired to use "the actual or threatened fear of foreclosure" to "induce" Plaintiff to pay for LPI. Compl. ¶ 203. But Plaintiff does not allege that OLS threatened foreclosure or that he was intimidated into paying for LPI based on a fear of foreclosure. Nor does he allege that any threatened foreclosure was a result of LPI and not of his failure to pay his mortgage. As a result, he has not sufficiently alleged that any threat of foreclosure was wrongful and he has failed to plead a predicate act of extortion. *See Desoto*, 371 F. App'x at 824 (dismissing RICO claim where extortion allegations were conclusory).

Regarding mail or wire fraud, the only example of the alleged fraud that Plaintiff identifies is that the letters sent to Plaintiff stated:

> We have incurred expenses in placing [LPI] . . . . Such expenses are recoverable by us . . . . Part of the policy premium charged to your

escrow account may be used by the insurance carrier to reimburse us for these expenses.

Compl. ¶ 192. Plaintiff alleges this was false because Servicing Defendants and Assurant had a "preexisting relationship," the compensation was a "kickback," and the statement does not disclose that the compensation "was at the borrowers' expense." *Id.* These all relate to the alleged inflated cost of LPI and fail for the reasons stated above. Further, the Complaint fails to plead any facts rendering it plausible that the letters were misrepresentations in a fraudulent scheme. Plaintiff does not allege that he was charged more than the stated LPI premium. And he does not dispute that some of the premium was used to pay OLS's expenses – he just does not like what he believes the expenses were for – expenses for monitoring his loan for insurance. *See* Compl. ¶ 8. Nor does he allege that he relied on this statement to decline his own insurance in favor of the LPI, insurance that he was repeatedly informed would be more expensive and provide less coverage. As a result, his claim that borrowers are "induced" to accept and pay for LPI based on the letters is not plausible. Moreover, as demonstrated above, Plaintiff's kickback allegations are nothing more than "labels and conclusions" that are not entitled to the assumption of truth. *See Cohen*, 735 F.3d at 611; *Feaz*, 745 F.3d at 1110-11.

Further, the Complaint ignores that the letters aim to convince Plaintiff that LPI is a poor choice and urging him to avoid it. *See supra* at p. 4-6 & Part III.C. And the letters repeatedly stated that Plaintiff could cancel the LPI by providing proof of coverage. Wilson Decl. Exs. B-J. Thus, it is implausible that the two sentences Plaintiff cites are part of a scheme to convince borrowers to continue paying for LPI. *See Cohen*, 735 F. 3d at 609; *Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 7051318, at *4-7 (C.D. Cal. Dec. 20, 2012) (dismissing RICO claim because the LPI letters were not "reasonably calculated to deceive"); *Weinberger v. Mellon Mortg. Co.*, 1998 WL 599192, at *5 (E.D. Pa. Sept. 10, 1998) (dismissing LPI RICO claims because letters warning of "an imminent bad deal and urg[ing] one to seek better" were not deceptive).

OLS'S AND OFC'S NOTICE OF MOTION AND MOTION TO DISMISS

### 3.      No Injury in Fact, Causation or Damages.

Plaintiff's RICO claims also fail because the Complaint does not adequately plead injury in fact, causation, or damages. Plaintiff must plead that the alleged violations were both the "but for" and "proximate" causes of his injury. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008). Here, the Complaint demonstrates that the content of the letters caused no injury as a matter of law. Plaintiffs' theory of causation and damages is that if he had known of the "kickbacks," he would have not paid the charges or would have contested them. But Plaintiff fails to plausibly allege that he actually paid for LPI, *see supra* Part I, and the Seventh Circuit characterized this theory of causation and damages as "senseless" because "[l]osing an opportunity to breach a contract cannot constitute a cognizable fraud harm." *Cohen*, 735 F.3d at 614. Further, it is implausible that Plaintiff relied on the letters to conclude that LPI was a good choice and to accept the LPI. The letters thus caused no injury and there is no actionable fraud.

### 4.      Plaintiff's Derivate RICO Conspiracy Claim Also Fails.

Plaintiff's RICO conspiracy allegations under section 1962(d) are essentially the same as the allegations asserted under section 1962(c). *See* Compl. ¶ 220. The RICO conspiracy claim thus fails because an agreement to commit an act that is not itself a RICO violation cannot support a claim of RICO conspiracy. *See, e.g.*, *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

### B.      Plaintiff's Breach of Contract Claim Fails Under California Law.

### 1.      Plaintiff's Contract Permits the Alleged Conduct.

Plaintiff does not dispute that his mortgage governs the exact issue he is litigating. Compl. ¶ 257. He admits that he was required to maintain insurance and that the mortgage explicitly explained that if he failed to do so, his lender would obtain insurance at his "expense." Compl. ¶¶ 71-72 & Ex. 15 at ¶ 5. As the Seventh and Tenth Circuits found, this straightforward language is susceptible to only one reasonable interpretation—that the lender had the right to purchase insurance and

1
2
3
4
5

"pass on" the entire premium charged by the insurer without "limitation or qualification." *Anapoell*, 2009 WL 766532, at *3. Because these contract terms are unambiguous, the proper interpretation of them can be resolved on a motion to dismiss and Plaintiff's breach of claim should be dismissed. *See Barrous v. BP P.L.C.*, 2010 WL 4024774, at *4 (N.D. Cal. Oct. 13, 2010).

6
7
8
9
10
11
12
13
14
15
16
17

Further, Plaintiff has not identified a single specific provision of the contract that he believes was breached. Instead, he asserts only that the Servicing Defendants obtained more LPI coverage than was necessary "to protect the value of the property or mortgagee's interest in the secured property." Compl. ¶ 261-263. He does not assert that the allegedly "inflated" LPI premiums breached an identified, express provision of the mortgage or that it was a breach of an express provision to obtain LPI as of the date of the lapse of prior coverage (i.e., what Plaintiff describes as "backdated" coverage). And he does not actually assert that his LPI coverage amount was higher than the value of the property. Indeed, as the LPI letters make clear, the coverage amount of the LPI was "based on the last known coverage amount" of your prior insurance or the unpaid principal balance of the loan. *See, e.g.*, Wilson Decl. Ex. D.

18
19
20
21
22
23
24
25
26
27
28

Moreover, Plaintiff's allegations undermine his assertion that OLS obtained more LPI coverage than necessary. Plaintiff alleges that his two mortgages from New Century were for $592,000 and $148,000. Compl. ¶¶ 77-78. He does not allege that his property was actually worth less than the value of those two loans. And Plaintiff's LPI coverage amount, which was between $506,250 and $528,745, was far less than the value of his loans. Compl. ¶¶ 110, 115, 124; Wilson Decl. Exs. D, G, J. Plaintiff's only allegation regarding his unpaid principal balance was that in August 2013 he obtained a loan modification that lowered his unpaid principal balance to $448,400. Compl. ¶ 127-128. But even assuming that is true, that did not occur until after all of the LPI coverage had been placed on his property. *See* Compl. ¶¶ 110, 114-115, 121 (alleging LPI was obtained in January

2012, sometime later in 2012, and in July 2013); *see also* Wilson Decl. Exs. D, G, J (certificates showing placement dates and coverage periods). Plaintiff does not allege that the LPI coverage amounts exceeded his unpaid principal balance at the time the LPI was placed. Thus, Plaintiff has not made a plausible allegation that the coverage amount exceeded the value of the property or the mortgagee's interest in the property (either one of which is expressly permitted by the mortgage).

### 2. Plaintiff's Implied Covenant Claim Fails Because His Allegations are Implausible.

Plaintiff also failed to allege a breach of the implied covenant. In California, "the implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007) (quote omitted). Thus, Plaintiff cannot prevail on a theory of breach by reading into the contract a duty that contradicts the contract's express terms. *Anapoell*, 2009 WL 766532, at *3.

Plaintiff asserts that the Servicing Defendants breach the implied covenant in four ways, none of which are plausible in light of Plaintiff's other allegations. Compl. ¶ 260. *First*, Plaintiff alleges that the Servicing Defendants failed to maintain Plaintiff's existing mortgage coverage. This argument fails because the mortgage expressly permits OLS to "to purchase . . . any type" of insurance. Compl., Ex. 15 ¶ 5. Thus, the mortgage did not require OLS to maintain Plaintiff's insurance. Further, Plaintiff admits that he did not have his own insurance when OLS became his mortgage servicer and thus there was no insurance for OLS to "maintain." *Second*, Plaintiff alleges the Servicing Defendants forced borrowers to pay more for LPI than the cost of protecting the lender's interest in the property. As noted above, this allegation is not plausible because Plaintiff does not allege that his LPI coverage amount was higher than the value of his property or his unpaid principal balance at the time the coverage was obtained. *Third*, Plaintiff

1  alleges the Servicing Defendants failed "to seek competitively priced insurance on

2  the open market" and instead obtained LPI through pre-arranged "secret deals" that

3  involved kickbacks." This argument is barred by the filed rate doctrine because the

4  cost of the LPI coverage was reviewed and approved by the California DOI. And

5  Plaintiff does not allege that his LPI premiums were uncompetitive in the relevant

6  market—the market for LPI. *Finally*, Plaintiff alleges that the Servicing

7  Defendants assessed "excessive, unreasonable, and unnecessary" insurance

8  premiums and misrepresented the reason for the cost of the policy. But as noted

9  above in Part III.D., OLS had the right to obtain LPI in the coverage amount and

10  for the period of time it obtained coverage, and nothing in the mortgage or letters

11  could reasonably have misled Plaintiff into believing that LPI was anything other

12  than a less desirable and higher cost product than what he could obtain on his own.

13       Because Plaintiff has not identified any plausible way in which OLS

14  breached the mortgage or the implied covenant, Plaintiff's claim should be

15  dismissed. *See Berger*, 476 F. Supp. 2d at 1177 (dismissing implied covenant

16  claim where defendant complied with their obligations under the contract).

17       **C.    Plaintiff's Unjust Enrichment Claim Fails.**

18       In California, there is no independent cause of action for unjust enrichment.

19  *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077

20  (N.D. Cal. 2011). Plaintiff's claim is therefore limited to a request for the remedy

21  of restitution tied to another actionable wrong and should be dismissed. *See Pirozzi

22  v. Apple, Inc.*, 966 F. Supp. 2d 909, 924 (N.D. Cal. 2013); *Hill v. Roll Int'l Corp.*,

23  195 Cal. App. 4th 1295, 1307 (Cal. Ct. App. 2011).

24       Plaintiff's claim should also be dismissed because it is based on the

25  "kickback" premise rejected by the Seventh, Tenth, or Eleventh Circuits. *See

26  Cohen*, 735 F.3d at 615. Without accepting Plaintiff's conclusory label as true,

27  nothing in the Complaint gives rise to an inference that OLS received an unjust

28  benefit. And Plaintiff's citation to a provision of the National Flood Insurance

Program, Compl. ¶ 273 (citing 42 U.S.C. § 4012(e)(2) and 12 C.F.R. § 22.3), is meaningless because Plaintiff's allegations involve hazard insurance and not federally mandated flood insurance for property in a flood zone.

Additionally, California courts routinely dismiss unjust enrichment claims where the subject matter of the claim is governed by an express contract. *See, e.g.*, *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F. 3d 1151, 1167 (9th Cir. 1996). Plaintiff's own allegations admit the existence of an express contract that covers the subject of this case. Compl. ¶¶ 71-72. Courts, including in this district, have dismissed similar LPI claims. *See, e.g.*, *Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 4761733, at *6-7 (C.D. Cal. Apr. 12, 2012). As a result, Plaintiff's claim should be dismissed.

### D.   Plaintiff's Allegations Under Section 17200 Fail to State a Claim.

To state a UCL claim for a putative class, Plaintiff must show that: (1) he suffered an actual injury-in-fact, and (2) the injuries occurred "as a result of the defendant's alleged unfair competition or false advertising." *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007). Plaintiff's allegations fail because (1) he has not identified any action likely to deceive, (2) he has not stated a claim under any other law, and (3) the LPI notices explained the LPI and he easily could have avoided it.

**Fraud Prong:** To state a claim under the fraud prong, Plaintiff must allege that members of the public were likely to be deceived by OLS's actions. *See Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159 (N.D. Cal. 2011). Plaintiff must also allege that OLS knew or should have known of the allegedly fraudulent representations. *Id*. at 1161-62. And Plaintiff must satisfy Rule 9(b).

Plaintiff's claim that the LPI letters included misrepresentations and omissions, Compl. ¶ 249(e), (h), (i), fails to satisfy Rule 9(b) because he does not point to any action by OLS that actually deceived him or was otherwise "likely" to deceive members of the public. Instead, the LPI letters establish that Plaintiff was

1    warned to avoid LPI and was aware of the requirement to obtain insurance but he

2    refused to do so. And the letters indicate that OLS informed Plaintiff that he could

3    obtain less expensive insurance, with more coverage, elsewhere. *See supra* Part

4    III.C. That is why the Seventh Circuit dismissed a similar claim under the Illinois

5    Consumer Fraud Act, an analogue to section 17200. *Cohen*, 735 F.3d at 608-12.

6         **Unlawful Prong:** To state a claim under the unlawful prong, one must state

7    a violation of another law. *See Rivera v. BAC Home Loans Servicing, L.P.*, 756 F.

8    Supp. 2d 1193, 1200 (N.D. Cal. 2010). Because Plaintiff's other causes of action

9    fail to state a claim, he also fails to state a claim under the unlawful prong.

10        **Unfair Prong:** In analyzing claims under the unfair prong, courts apply a

11   three-factor test to determine if the alleged actions were unfair: (1) whether the

12   injury is substantial, (2) whether it is not outweighed by countervailing benefits to

13   consumers or to competition, and (3) whether the consumer could have reasonably

14   avoided the injury. *See In re Sony Grand Wega KDF-E A10/A20 Series Rear*

15   *Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010).

16        Plaintiff alleges that Servicing Defendants engaged in the following "unfair"

17   actions: (1) failing to maintain Plaintiff's existing insurance policy, (2) obtaining

18   LPI that cost more than the cost of protecting the lender's interest in the property

19   and included "kickbacks," (3) backdating the LPI and obtaining coverage that

20   overlapped with the coverage provided by a "standard mortgage clause" or

21   "Lender's Loss Payable Endorsement," and (4) failing to provide borrowers "any

22   opportunity whatsoever to opt out of having their LPI policies provided by an

23   insurer with whom Servicing Defendants had an affiliate relationship or

24   commission arrangement." Compl. ¶ 249(b)-(d), (f)-(g), (j)-(l).

25        Plaintiff's allegations fail for the same reasons the Seventh, Tenth, and

26   Eleventh Circuits articulated. *See supra* Part III. Plaintiff's claim also fails because

27   (1) Plaintiff does not allege he had an insurance policy that OLS could have

28   extended in lieu of obtaining LPI or that contained either a standard mortgage

clause or Lender's Loss Payable Endorsement that extended the insurance coverage for the lender, (2) Plaintiff does not allege that his LPI coverage exceeded his unpaid principal balance, and even if it did, lenders have the right to obtain such coverage, (3) Plaintiff fails to identify any basis upon which it could be considered unfair for OLS to obtain LPI from any particular insurer, affiliated or not, and (4) Plaintiff does not allege that his LPI premiums were unavoidable, and indeed the LPI letters make it explicitly clear that at all times Plaintiff could avoid LPI by obtaining his own, less expensive, insurance. *See Cohen*, 735 F.3d at 610.[7]

## E.    Claim for Declaratory and Injunctive Relief Should be Dismissed.

Plaintiff's final claim for declaratory and injunctive relief fails because it is not an independent cause of action. *Vogan v. Wells Fargo Bank, N.A.*, 2011 WL 5826016, at *8 (E.D. Cal. Nov. 17, 2011) (dismissing claim as duplicative and unnecessary); *Gomez v. Wachovia Mortg. Corp.*, 2010 WL 291817, at *8 (N.D. Cal. Jan. 19, 2010) (concluding injunctive relief is a remedy and not a cause of action). Indeed, Plaintiff bases his claim on "each cause of action stated above." Compl. ¶ 280. As a result, the claim should be dismissed for the same reasons stated above. *See Gustafson*, 2012 WL 7051318, at *13 (dismissing declaratory and injunctive relief claim to extent based on claims being dismissed).

Moreover, injunctive relief is not appropriate because Plaintiff alleges that his loan has been modified, Compl. ¶ 127, and therefore he no longer owes the LPI premiums. *See Faili v. BAC Home Loans Servicing LP*, 2014 WL 255704, at *16 (C.D. Cal. Jan. 23, 2014) (dismissing injunctive relief claim because plaintiffs no longer owed LPI premiums).

---

[7] Likewise, the allegations fail the balancing test, which concludes a practice is unfair if it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886-87 (Cal. Ct. App. 1999). Contrary decisions involved direct allegations that plaintiff maintained his own insurance. *See, e.g.*, *Gustafson*, 2012 WL 7051318, at *12.

**V.      Claims Against OFC Fail Because of Improper Group Pleading and For the Reasons the Claims Against OLS Fail.**

Plaintiff does not allege that OFC was his mortgage servicer or allege any connection to OFC at all. Instead, Plaintiff alleges that OLS was his servicer, Compl. ¶ 101, but nevertheless proceeds to improperly lump OLS and OFC together. *See* Compl. ¶ 1 (defining OLS and OFC as "Ocwen" and proceeding to make allegations only against "Ocwen"). Plaintiff then adds a second layer of bootstrapping, when it lumps "Ocwen" together with "Saxon" (itself an improper composite of various other Defendants), and Deutsche Bank. Such lumping is insufficient to satisfy Rule 9(b). *See, e.g.*, *Gonzales v. Planned Parenthood of Los Angeles*, 2011 WL 1481398, at *8 (C.D. Cal. Apr. 19, 2011). Moreover, "[i]t is a general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries.'" *Salkin v. United Servcs. Auto. Ass'n*, 767 F. Supp. 2d 1062, 1065 (C.D. Cal. 2011). Thus, OFC's status as an indirect parent corporation of OLS is insufficient to impute liability OLS's liability to OFC. Plaintiff has therefore failed to state a claim against OFC.

Even if Plaintiff could lump together OLS and OFC, two entirely separate entities, the claims against OFC should be dismissed for the same reasons Plaintiff has failed to state a claim against OLS. *See supra* Parts I-IV.[8]

## CONCLUSION

For the foregoing reasons, OLS and OFC respectfully request the Court dismiss all claims against them (Counts 1-2, 4-7).

---

[8] Plaintiff's allegations that OFC "assumed liability" for Saxon should be disregarded as conclusory, and, fail, in any event, for the reasons stated in the text and in the Motion to Dismiss filed by Saxon. *See also No Cost Conference, Inc. v. Windstream Commc'ns.*, 940 F. Supp. 2d 1285, 1299 (C.D. Cal. 2013) (conclusory "assumption" allegations disregarded).

Dated:  August 4, 2014

Respectfully Submitted,

BUCKLEYSANDLER LLP

/s/ Fredrick S. Levin
Fredrick S. Levin (Bar No. 187603)

*Attorney for Ocwen Loan Servicing, LLC and Ocwen Financial Corporation*