UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ronald Kravitz | Mary Gearns |
| Valerie Chang | Fredrick Levin |
| Stephen Fearon, Jr. | W. Glenn Merten |
| | Mark Neubauer |

**Proceedings:**   DEFENDANTS AMERICAN SECURITY INSURANCE
COMPANY & SAXON MORTGAGE SERVICES'S MOTION
TO SEVER (Filed 08/04/2014)[65]

DEFENDANT SAXON MORTGAGE SERVICES'S MOTION
TO DISMISS (Filed 08/04/2014)[73]

DEFENDANT AMERICAN SECURITY INSURANCE
COMPANY'S MOTION TO DISMISS (Filed 08/04/2014)[67]

DEFENDANT OCWEN LOAN SERVICING LLC'S MOTION
TO DISMISS (Filed 08/04/2014)[74]

DEFENDANT DEUTSCHE BANK TRUST COMPANY
AMERICAS'S MOTION TO DISMISS (Filed 08/04/2014)[76]

## I.    INTRODUCTION

On May 9, 2014, Plaintiff Shane Valdez filed this putative class action against
defendants Saxon Mortgage Services, Inc. ("Saxon"), Morgan Stanley, Deutsche Bank
Trust Company Americas ("Deutsche Bank"), Ocwen Financial Corporation, Ocwen
Loan Servicing LLC ("Ocwen"), Assurant, Inc., and American Security Insurance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**               **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

Company ("ASIC"). Dkt. 1.[1]  Plaintiff's complaint asserts claims for: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.* against all defendants; (2) violation of RICO, 18 U.S.C. § 1962(d) against all defendants; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code §§ 17200, *et seq.* against all defendants; (4) breach of contract, including breach of the implied covenant of good faith and fair dealing, against defendants Ocwen, Saxon, and Deutsche Bank (collectively, "Servicing Defendants"); (5) unjust enrichment against defendant ASIC and, as an alternative claim, against the Servicing Defendants; and sixth, (6) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* against defendant Deutsche Bank.  Id.  Finally, plaintiff requests declaratory and injunctive relief against all defendants.  Id.

On August 4, 2014, defendants ASIC and Saxon jointly moved to sever the alleged claims against them from the claims against Ocwen and ASIC.  Dkt. 66.[2]  Plaintiff opposed this motion on August 25, 2014, dkt. 80, and defendants ASIC and Saxon replied on September 8, 2014, dkt. 99.

Defendants ASIC, Saxon, Ocwen, and Deutsche Bank each filed motions to dismiss in August 2014. Dkts. 67, 73, 74, 76.[3]  Plaintiff filed separate oppositions to each

---

[1] Plaintiff voluntarily dismissed defendants Assurant, Inc., Morgan Stanley, and Ocwen Financial Corporation on August 24, 2014.  Dkts. 85, 86, 87.  In light of this, the Court does not address their motions to dismiss which were filed prior to their voluntary dismissal from this action.

[2] ASIC requests that the Court take judicial notice of a complaint filed in the United States District Court for the Southern District of California.  Dkt. 100.  To the extent that this document is a matter of public record, the Court takes judicial notice of it. See Fed. R. Evid. 201; Harris v. County of Orange, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts)

[3] ASIC also requests that the Court take judicial notice of several publicly filed documents.  Dkt. 71 ("ASIC RJN").  The Court takes judicial notice of these matters of public record.  Harris, 682 F.3d at 1131–32.  Saxon requests that the Court take judicial

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|---------------------|
| Title    | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

motion.  Dkts. 81, 83, 88, 96.  Defendants each replied in September 2014.  Dkts. 97, 98, 101, 104.  The Court held a hearing on September 29, 2014.  Having considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

This case arises from defendants' alleged misconduct in connection with the issuance of force-placed insurance ("FPI") policies.  Plaintiff's complaint sets forth the following facts, which the Court accepts as true for the purpose of defendants' 12(b)(6) motions.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir.1996).

As a condition of funding borrowers' loans, mortgagees require borrowers to purchase and agree to maintain hazard insurance coverage on their secured property.  Compl. ¶ 42.  In order to ensure that the lender's interest in the secured property is protected, mortgage loan contracts typically allow the lender or third-party servicer to "force place" insurance policies when the homeowner fails to maintain the required insurance.  Id. ¶ 43.  The amounts disbursed for the procurement of such  insurance becomes additional debt secured by the mortgage.  Id.  FPI policies, also known as lender placed insurance ("LPI") policies, are almost always more expensive than standard insurance coverage and can cost as much as ten times more than standard policies.  Id. at ¶ 46.  Although the FPI policy primarily benefits the lender, the cost is passed on to the borrower.  Id.

_____

notice of a Hazard Insurance Authorization and Requirements Form, dated February 23, 2007, and Excerpts of the Pooling and Servicing Agreement, dated as of May 1, 2007.  Dkt. 73-1 ("Saxon RJN").  To the extent that the complaint "necessarily relies" on these documents, the Court takes judicial notice of them.  See Marder v. Lopez, 450 F.3d  445, 448 (9th Cir. 2006).  Deutsche Bank requests that the Court take judicial notice of a complaint filed in the Northern District of Illinois.  Dkt. 105.  The Court takes judicial notice of this matter of public record.  Harris, 682 F.3d at 1131–32.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

### A.     Plaintiff's Mortgage

In January 2005, plaintiff Shane Valdez purchased a residence at 511 Clarion Place, Claremont, California 91711 ("the Property"), for $500,000.  Compl. ¶ 69.  To fund this purchase, plaintiff obtained a loan from WMC Mortgage Corp. ("WMC") in the amount of $500,000, secured by a deed of trust on the Property.  Id.  On February 23, 2007, plaintiff refinanced his mortgage and executed a deed of trust with New Century Mortgage Corporation ("New Century") in the amount of $592,000 ("the Mortgage").  Id. ¶ 70.  That same day, plaintiff also executed a second deed of trust ("Second Mortgage") with New Century for the amount of $148,000.  Id. ¶ 75.

The Mortgage required plaintiff to maintain hazard insurance coverage on the property.  Id. ¶ 71.  In the event that plaintiff failed to maintain such coverage, the Mortgage provided that the "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument[.]"  Id.  Specifically, paragraphs five and nine of plaintiff's Mortgage provide:

> **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the period that Lender requires . . . If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense . . . Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. ["Insurance Provision"]
>
> * * *
>
> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is <u>reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument</u> . . . Any amounts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|--------------------|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. ["Limiting Provision"]

Id. ¶ 72. (emphasis in original)

Pursuant to the requirements of the Mortgage, plaintiff maintained his own hazard insurance on the Property until in or around 2008, at a total policy premium amount of approximately $973 per year through Farmers Insurance ("Farmers"). Id. ¶ 74.

**B.    Defendants' Conduct**[4]

Defendant Deutsche Bank has been plaintiff's lender since approximately 2008, continuing through the present. Id. ¶ 80. Until April 2012, defendant Saxon was a residential mortgage servicer that managed home loan payments and transactions for primarily non-prime home loans. Id. ¶ 25. Until on or about May 16, 2011, Saxon serviced plaintiff's Mortgage. Id. ¶ 35.

Defendant Ocwen is one of the largest third-party servicers of subprime residential mortgage loans in the country. Id. ¶ 35. Since at least May 16, 2011, Ocwen has serviced plaintiff's Mortgage. Id. ¶ 36. In March 2012, Ocwen entered into an Amended and Restated Purchase Agreement whereby Ocwen purchased the servicing rights of loans previously serviced by Saxon. Id. ¶ 32. At all relevant times, Saxon and Ocwen's conduct was approved, authorized, and/or ratified by Deutsche Bank. Id. ¶ 37.

Defendant ASIC writes FPI policies. Id. ¶ 34. ASIC also provides services to the Servicing Defendants—i.e., Deutsche Bank, Saxon, and Ocwen—in relation to their FPI

---

[4] Plaintiff's complaint also incorporates the content of several news articles and state and federal government documents, dated from 2005 through 2013, demonstrating that the "FPI practices of mortgage lenders and servicers, insurance providers and insurance producers are currently the subject of a number of government investigations prompted by concerns that consumers are being gouged when they are force-placed into insurance following a lapse in their policies." Id. ¶ 142; See generally ¶¶ 13-18, 60-70, 143-160.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|---------------------|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

practices, including: (1) tracking borrower's loan to determine the existence of hazard insurance; (2) placing FPI for Servicing Defendants when there has been a lapse; and (3) handling all customer service duties related to FPI. Id. The FPI policies issued to plaintiff, discussed *infra*, were underwritten by ASIC. Id.

When plaintiff stopped maintaining hazard insurance in 2008, instead of opting to continue plaintiff's previous policy, defendant Saxon force-placed hazard insurance on plaintiff's property at an annual premium of approximately $7,341.00 at a coverage amount of $506,250 through non-party insurer Balboa. Id. ¶ 84. Around that same time, Saxon set up an escrow account for plaintiff in order to charge plaintiff for the premiums of the FPI policy. Id. ¶ 85.

In 2010, Saxon sent plaintiff a form letter stating that his "fire/homeowners insurance expired/cancelled" on January 10, 2010 and that Saxon required evidence of the continuation of plaintiff's insurance coverage as soon as possible. Id. ¶ 87.

On February 20, 2010, plaintiff received an insurance binder from ASIC notifying plaintiff that hazard insurance was force-placed on his Property and backdated to cover the period beginning January 10, 2010 through March 11, 2010, for an annual premium of $3,615.00. Id. ¶ 89. The policy's coverage amount was $506,250. Id. On April 4, 2010, Saxon sent plaintiff another letter informing plaintiff that "lender placed coverage has been ordered, and the enclosed policy's annual premium of $3,615.00 has been billed to an impound/escrow account established for your loan." Id. ¶ 90. This policy was issued through ASIC and was backdated to cover the period from January 10, 2010 through January 10, 2011, with a coverage amount of $506,250. Id. The Saxon 2010 FPI Notice further stated that the FPI "will have significantly higher premiums than standard insurance premiums because our carrier has issued the policy without the benefit of normal underwriting guidelines," and that the policy "covers only the building," and that Saxon "incurred expenses in placing this policy, [and] as a result [Saxon] may receive reimbursement for such expenses from the insurance company." Id. ¶ 91.

Plaintiff alleges that the Saxon's notice was "fraudulent, deceptive, and misleading" because, upon information and belief, Saxon received undisclosed kickbacks and commissions from ASIC pursuant to exclusive purchasing agreements. Id. ¶ 92. Plaintiff also alleges that "Saxon did not incur expenses in placing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**               **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|--------------------|
| Title    | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. |

this policy through ASIC, because, upon information and belief, Saxon already received compensation for its FPI services from its lender agreements and received a kickback through additional "reimbursement [] from the insurance company." Id. ¶ 93.

Further, plaintiff alleges that:

While Plaintiff's mortgage allows the lender to "pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument," and to be reimbursed by the borrower, *see* Mortgage at ¶ 9 [], the Mortgage does not authorize either the lender or the servicer to require the borrower to obtain hazard insurance in excess of borrower's outstanding loan balance or in excess of the value of the property. Nor does the Mortgage authorize either the lender or servicer to require the borrower to pay in excess of the net costs of those services in order for the lender, servicer and/or its affiliates to make a profit at the borrower's expense.

Id. ¶ 95.

On January 22, 2011, Saxon sent plaintiff a letter which enclosed "a renewal policy obtained by, Saxon on your behalf[.]" Id. ¶ 97. The letter repeated statements made in Saxon's prior letters, and advised plaintiff that "Saxon has billed your impound/escrow account for the annual premium due of $3,615.00." Id. The enclosed FPI policy was from ASIC and was backdated to become effective beginning January 10, 2011 through January 10, 2012. Id. ¶ 98.

On April 23, 2011, plaintiff received a notice from ASIC notifying him that his FPI was being canceled effective May 16, 2011, because his loan had been transferred to Ocwen and "the mortgagee/lender no longer has an insurable interest in the property." Id. ¶ 102.

On or about October 1, 2011, Ocwen sent plaintiff a letter notifying him that his hazard insurance had expired on May 17, 2011, and that if Ocwen did not receive proof of adequate insurance, "we may purchase hazard insurance beginning from the date of lapse, based on the amount of coverage you provided on your previous insurance policy, if available, and charge you for the cost of the insurance." Id. Plaintiff alleges that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

Ocwen 2011 Request for Hazard Insurance was fraudulent, deceptive, and misleading because, like defendant Saxon, "Ocwen did not purchase FPI based on the 'amount of coverage you provided your previous insurance policy' but instead, upon information and belief, purchased FPI based on exclusive purchasing agreements with ASIC to receive kickbacks." Id. ¶ 104.

On November 5, 2011, Ocwen sent plaintiff a second letter informing him that the hazard insurance Ocwen would force-place would be more expensive than standard hazard insurance because the insurance "is issued automatically without evaluating the risk of insuring your property." Id. On January 21, 2012, Ocwen sent plaintiff a letter informing him that Ocwen had force-placed hazard insurance though ASIC, for an annual premium amount of $3,402.00, with a coverage amount of $506,250. Id. ¶ 110. The notice also informed plaintiff that the policy had been backdated to cover the period beginning on or about May 17, 2011, through May 17, 2012. Id. ¶ 111.

Beginning in or around 2012, Ocwen again force-placed insurance on plaintiff's Property through ASIC at an annual premium of approximately $3,453 and a coverage amount of approximately $506,250 and backdated the policy to begin in or around May 2012. Id. ¶ 115.

On June 1, 2013, Ocwen mailed plaintiff a notice of placement of renewal insurance, informing plaintiff that if he did not show proof of acceptable coverage, Ocwen would renew the FPI policy placed on Plaintiff's property in 2012, which had been purchased "because acceptable proof of coverage was not provided." Id. ¶ 119. As noted *supra*, plaintiff alleges that the true reason for purchasing the coverage was because Ocwen received kickbacks and commissions from ASIC pursuant to exclusive purchasing agreements. Id. ¶ 120.

On July 13, 2013, Ocwen sent plaintiff another letter enclosing the FPI policy that Ocwen purchased on plaintiff's behalf through ASIC. Id. ¶ 121. The FPI policy was backdated to cover the period beginning on or about May 17, 2013 through May 17, 2014, with an annual premium of approximately $2,469 and a coverage amount of $528,745. Id. ¶ 124. Plaintiff alleges the Ocwen 2013 Notice of FPI was "fraudulent, deceptive, and misleading" because, as discussed *supra*, Ocwen did not incur expenses in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

placing this policy through ASIC, since Ocwen had already received compensation for its FPI services through its secret agreements.  Id. ¶ 123.

In August 2013, Plaintiff entered into a commitment to modify his Mortgage and to process a Partial Claim with Ocwen ("the Loan Modification").  Id. ¶ 127.  As a result, plaintiff's principal balance on his mortgage was reduced to $448,400.  Id.  The loan modification did not affect the terms of plaintiff's original mortgage pertaining to hazard insurance.  Id. ¶ 129.  Plaintiff alleges that, despite the new lower principal balance, Ocwen maintained the FPI on plaintiff's Property at the same amount ($528,745), or approximately $80,345 more than the indebtedness on plaintiff's loan.  Id. ¶ 128.  The amount of coverage Ocwen force-placed on plaintiff's Property allegedly exceeded Ocwen's interest in the Property, since it exceeded the outstanding principal balance on the loan.  Id. ¶ 130.

On September 18, 2013, plaintiff's Second Mortgage was assigned to Nationwide Credit, Inc. for collection.  Id. ¶ 131. The remaining balance on the Second Mortgage was approximately $239,016.51.  Id.  However, plaintiff alleges that defendants only force-placed insurance on his original Mortgage.  Id.  ¶ 83.

C.     **Plaintiff's Claims**

Plaintiff asserts his claims on behalf of the following proposed class:

> All persons who have or had a residential mortgage loan or line of credit owned, originated or serviced by Servicing Defendants secured by property located in California and, in connection therewith, were charged for "force-placed" hazard insurance on the secured property within the applicable statute of limitations.

Id.  ¶ 161.

The gravamen of plaintiff's complaint is that "[l]enders and servicers like Deutsche Bank, Ocwen and Saxon have manipulated the force-placed insurance [policies] by making secret agreements with insurance companies to receive kickbacks for force placing policies with those companies."  Id.  ¶ 6.  These secret agreements "return a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

financial benefit to Servicing Defendants that is unrelated to any contractual or other *bona fide* interest in protecting the lender's interest in the loan, and which results in unauthorized, unjustified and unfairly inflated charges to the borrower for force-placed insurance in violation of the law." Id. ¶ 10.

Finally, the complaint emphasizes that:

Plaintiff does not challenge the rates of his force-placed insurance provider as excessive nor Servicing Defendants' right to force-place insurance. Rather, Plaintiff challenges, among other things and as further described herein, Servicing Defendants' *decision to purchase* force-placed hazard insurance from Assurant and/or one of its affiliates pursuant to an exclusive agreement which imposed charges unrelated to the provision of force-placed insurance on borrowers who were force-placed, such that the prices far exceeded borrower-purchased insurance (while providing substantially less coverage), in order to provide a financial benefit to Servicing Defendants and Assurant.

Id. ¶ 22 (emphasis in original).

## III.   LEGAL STANDARD

### A.   Motion to Sever

Under Federal Rule of Civil Procedure 20(a)(2), permissive joinder of defendants is proper if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed .R. Civ. P. 20(a)(2). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). "Rule 20(a)(2) is designed to promote judicial economy and trial convenience." Hard Drive Prods., Inc. v. Does 1–188, 809 F. Supp. 2d 1150, 1156 (N.D. Cal. 2011). If the Court concludes that joinder is not proper, a court may "add or drop a party," or "sever any claim against a party." Fed. R. Civ. P. 21. Further, even if the permissive joinder requirements are met, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

Court may sever to avoid delay, jury confusion, or prejudice to the moving party.  Fed. R. Civ. P. 20(b); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000).

### B.     Motion to Dismiss

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence."  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  In other words, a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can be facial or factual.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  Id.  "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction."   In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 546 F.3d 981, 984–985 (9th Cir. 2008).  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Meyer, 373 F.3d at 1039.  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  Id.  When a motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving that the court has subject matter jurisdiction.  Tosco Corp. v. Cmtys. for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001) overruled on other grounds by Hertz Corp. v. Friend, 559 U.S. 77 (2010).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 55 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|---------------------|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief .") (citing Twombly and Iqbal).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "However, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)).  "A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."  Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir.1989).

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir.1 996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998).   A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970,  986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|---------------------|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6).  <u>United States v. City of Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  <u>Schreiber Distrib. Co. v. Serv–Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   ANALYSIS

### A.   Motion to Sever

Defendants ASIC and Saxon seek to sever plaintiff's claims against Saxon and ASIC from plaintiff's claims against Ocwen and ASIC.  Defendants assert that joinder was improper pursuant to Rule 20(a) because the claims against Saxon and Ocwen derive from their "mutually exclusive relationships" with ASIC and "unrelated transactions" such that there are "no common questions of law or fact."  Mot. Sev. at 3, 11. Alternatively, defendants assert that, even if they were properly joined, severance is proper since it would be "patently unfair to risk one defendant being held responsible for the acts or omissions of another."  <u>Id.</u> at 13. The Court is unpersuaded by defendants' arguments.

First, the Court finds that plaintiff's claims arise out of the same "series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(2)(A).  "The first prong, the 'same transaction' requirement, refers to similarity in the factual background of a claim." <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1350 (9th Cir. 1997) (finding claims were not sufficiently related where plaintiffs did not allege that claims arose "out of a systematic pattern of events.").  Here, plaintiff alleges that both Saxon and Ocwen serviced his single mortgage, albeit at different times, and that each contracted with ASIC to maintain force-placed hazard insurance on plaintiff's property in violation of both the terms of that mortgage and state and federal laws.  Opp'n Mot. Sev. at 6-7.  Moreover, the thrust of plaintiff's complaint is that defendants engaged in a scheme to defraud plaintiff, with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|--------------------|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

ASIC "at the heart" of that scheme. Id. at 2. Contrary to defendants' assertions, the fact that "ASIC's relationships with Saxon and Ocwen were and are governed by different program agreements," Reply Sev. at 2, does not render plaintiff's claims against Saxon and Ocwen sufficiently unrelated such that joinder was inappropriate. League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1977) (Rule 20 "is to be construed liberally"). The Court is satisfied that the existence of a single underlying mortgage, coupled with allegations of defendants' systematic misconduct, satisfies the same transaction or occurrence requirement.

Similarly, the Court finds that there are several questions of law or fact that are common to defendants Saxon, Ocwen, and ASIC. Fed. R. Civ. P. 20(a)(2)(B) (requiring "any question of law or fact" be common to defendants) (emphasis added). Here, the primary common, legal question is whether Saxon and Ocwen's actions, in coordination with ASIC, violated the terms of plaintiff's mortgage and various laws. Opp'n Sev. at 11. There also appear to be several other common questions, including whether ASIC paid kickbacks to Owen and Saxon and whether defendants engaged in a pattern of racketeering activity. Id. at 11-12. In opposition, defendants assert that common questions do not exist because "the Court will need to assess separately the contract that [ASIC] had with Saxon from the one it has with Ocwen . . . ." Mot. Sev. at 12. At this early stage in the litigation, the Court is not persuaded that the existence of these two separate agreements "will require review of vastly divergent information and consequences." Id. at 11 (quoting Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv., 2009 WL 3857417 at *7 (E.D. Cal. Nov. 17, 2009); See also Farris v. International Paper Company, 2014 WL 9 3657051 * 4, 8 (C.D. Cal. July 21, 2014) (interests of judicial economy favored completion of discovery and adjudication of all dispositive motions prior to any potential severance).

Finally, defendants' assertion that severance is appropriate to prevent prejudice and confusion of jurors is premature. At this time, any potential prejudice is purely speculative. In any event, the Court has many tools to prevent such prejudice should it arise, including granting protective orders to protect defendants' respective trade secrets, issuing curative jury instructions, and even conducting separate trials. See Fed. R. Civ. Pr. 20(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|--------------------|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. |

Because joinder was appropriate under Rule 20, and severance pursuant to Rule 21 is not warranted at this time, the Court DENIES defendants' motion to sever.

**B.     Motions to Dismiss**

Defendants move to dismiss each of plaintiff's claims.  Before reaching the individual claims, the Court addresses several overarching arguments that defendants contend require the Court to dismiss this entire action.

**1.     Standing**

Pursuant to Rule 12(b)(1), defendants Ocwen and Saxon assert that the complaint must be dismissed because plaintiff never paid FPI premiums to Ocwen and Saxon, and thus plaintiff fails to allege an injury-in-fact.  Saxon Mot. Dism. 10-11; Ocwen Mot. Dism. 7-8.  See Laub v. U.S. Dept. of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003) (discussing Article III standing requirements, including injury-in-fact).[5]  Plaintiff responds that he suffered an injury-in-fact when Saxon and Ocwen charged his escrow account for FPI premiums between 2008 and 2013, that his loan modification reflected these allegedly improper FPI premiums, and that he incurred tax liability as a result. Opp'n Saxon Mot. Dism. 1; Opp'n Ocwen Mot. Dism. 1 (citing In re Toyota Motor Corp., 790 F. Supp. 2d 1152, 1167 (C.D. Cal. 2011)).  Ocwen and Saxon counter that plaintiff never "overpaid" for anything and that, "as a matter of law, the loan modification generated no 'gross income' and thus no possible injury."  Ocwen Reply 4-5; Saxon Reply 6-7.[6]

_____

[5] Defendant ASIC also argues that  plaintiff lacks standing, but does so in relation to the filed rate doctrine, discussed *infra*.

[6] Both Saxon and Ocwen direct the Court to the Declaration of Gina Freezer, submitted by Ocwen in support of its motion to dismiss, which contains plaintiff's Loan Modification agreement.  Ocwen Mot. Dism. 8; Saxon Mot. Dism. 11.  Plaintiff objects to the use of this declaration to prove the contents of the Loan Modification pursuant to Federal Rule of Evidence 1002 (the "best evidence" rule).  Opp'n Saxon Mot. Dism. 2. Because the Court finds that plaintiff has standing without relying on this declaration, plaintiff's objection is moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

The Court finds that plaintiff adequately alleged injury-in-fact. The complaint alleges that plaintiff entered into a loan modification agreement with Ocwen in August 2013, which reduced plaintiff's principal loan balance to $448,400. Compl. ¶ 127. In the preceding paragraphs, the complaint alleges that Saxon and Ocwen charged plaintiff's escrow for FPI premiums—charges that were added to plaintiff's principal loan balance. See Compl. ¶ ¶ 85-126. Although the complaint does not state the amount of plaintiff's principal loan balance prior to the modification, it follows that, but-for Ocwen and Saxon's allegedly unlawful charges to plaintiff's escrow account, plaintiff's pre-modification principal balance would have been lower. In short, plaintiff's principal balance post-modification necessarily includes costs associated with Saxon and Ocwen's allegedly unlawful conduct pre-modification. Moreover, since October 2013 through at least March 2014, plaintiff has made a monthly payment to Ocwen of approximately $2,100 towards payment of the post-modification balance. Decl. Shane Valdez ¶ 15.[7] This alleged economic injury constitutes an injury-in-fact and accordingly, plaintiff has standing to bring claims against both Ocwen and Saxon. See, e.g., Montana Shooting Sports Ass'n v. Holder, 727 F.3d 975, 979 (9th Cir. 2013) (economic injury supports standing).

**2.      Filed Rate Doctrine**

Each defendant asserts that plaintiff's claims are barred by the filed rate doctrine. ASIC Mot. Dism. 5-9; Ocwen Mot. Dism. 8-9.[8] ASIC frames this issue in terms of standing, asserting that the filed rate doctrine precludes plaintiff from stating a legally cognizable injury. ASIC Mot. Dism. 5. ASIC has filed its rates with the California Department of Insurance, and argues that, since the Department approved the rates—including "commissions and expenses related to servicers"—no legal right of plaintiff could have been violated. Id. at 5. Although Ocwen does not frame the filed

---

[7] When considering a 12(b)(1) challenge, the Court may look to documents beyond the four corners of the complaint. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

[8] Saxon and Deutsche Bank incorporate ASIC's arguments by reference. Saxon Mot. Dism. 7; Deutsche Bank Mot. Dism. 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

rate doctrine as an issue of standing, Ocwen nonetheless argues that the doctrine bars plaintiff's claims because, at bottom, plaintiff challenges the FPI premiums as excessive. Ocwen Mot. Dism. 8.

The filed rate doctrine provides that "any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2d Cir. 1994); see also Gustafson v. BAC Home Loans Servicing, LP, et al., 2012 WL 7051318, at *4 n. 2 (C.D.Cal. Dec. 20, 2012) ("Gustafson II" ).

Courts in this district have declined to dismiss claims where a plaintiff challenged defendants' decision to force-place unnecessary, duplicative, or backdated insurance. See Vitek v. Bank of Am., N.A., 2014 WL 1042397, at *3-4 (C.D. Cal. Jan. 23, 2014); Faili v. BAC Home Loans Servicing LP, 2014 WL 255704, at *6 (C.D. Cal. Jan. 23, 2014); Smith v. SunTrust Mortg. Inc., 2013 WL 5305651, at *5-6 (C.D. Cal. Sept. 16, 2013) (noting that "the conclusion that the filed rate doctrine doesn't bar the asserted claims is consistent with the weight of relevant case law"); Gustafson v. BAC Home Loans Servicing LP, 2012 WL 7071488, at *13 (C.D.Cal. Dec. 26, 2012) ("Gustafson III"); Gustafson II, 2012 WL 7051318, at *4 n. 2.

For example, in Gustafson II the court drew a distinction between a challenge to defendants' conduct and a challenge to the rates themselves. See Gustafson II, 2012 WL 7051318, at *4 n. 2; Gustafson III, 2012 WL 7071488, at *13. Other courts have drawn a similar distinction. See, e.g., Smith, 2013 WL 5305651, at *9. Here, as in Gustafson II, plaintiff does not challenge the rates themselves but rather, defendants' decision to purchase FPI policies pursuant to secret agreements that contained kickbacks, and their subsequent decision to force-place unnecessary and backdated insurance on plaintiff's property. See, e.g., Compl. ¶¶ 22, 183.

ASIC argues that the alleged kickbacks and tracking expenses were approved by the California Department of Insurance as components of the rate structure, relying on two decisions, one by the San Diego County Superior Court, and a related decision by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|---------------------|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

California Insurance Commissioner.[9]  ASIC appears to have advanced an identical argument in Cannon v. Wells Fargo Bank N.A., 2014 WL 324556, at *5-6 (N.D. Cal. Jan. 29, 2014) ("Cannon II").  See ASIC Mot. Dism. 5-7.  There, the court concluded that the decisions did "not support ASIC's contention that these are approved components of ASIC's insurance rate, vis-à-vis the borrower."  2014 WL 324556 at *5.  Further, the court reasoned that the Insurance Commissioner's "determination is different from what is at issue here—whether the lender committed fraud on the borrower by mischaracterizing the nature of the charges."  Id.  The Court finds this analysis of ASIC's arguments persuasive.

Defendants also argue that the Court should apply the filed rate doctrine because, in order to calculate damages, the Court will necessarily need to determine the difference between a reasonable rate and the amount actually charged.  See ASIC Mot. Dism. 7. Another court addressed—and rejected—this same argument in Vitek v. Bank of Am., N.A., 2014 WL 1042397 (C.D. Cal. Jan. 23, 2014).   Looking to the complaint's allegations of illicit kickbacks, the Vitek court determined that "it is not clear that the Court would have to determine a reasonable rate to determine damages."  2014 WL 1042397, at *3.  The court continued: "If the kickbacks and commissions are determined to be unlawful and the amount of those kickbacks and commissions can be readily ascertained, then damages would be awarded based on the amounts of those kickbacks and commissions, which would not require the Court to determine or declare a reasonable rate."  Id.  Here, plaintiff's complaint contains similar allegations of illicit kickbacks.  See e.g. Compl. ¶¶ 45, 92, 93, 104.  In light of these allegations, the Court finds defendants' filed rate arguments unpersuasive.  Cf. Leghorn v. Wells Fargo Bank, N.A., 2013 WL 3064548, at *21 (N.D. Cal. 2013) ("Just because the damages are based on increased costs incurred as a result of the alleged kickback scheme does not transform a challenge to conduct and practices into a challenge to premiums.").

Accordingly, the Court declines to dismiss plaintiff's claims at this stage based on the filed rate doctrine.

_____

[9] Both of these decisions are attached to ASIC's accompanying Request for Judicial Notice ("ASIC RJN").  Dkt. 71, Exs. B, C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

### 3.    Decisions from the Seventh and Eleventh Circuits

Defendants all argue, in various iterations, that this Court should adopt the reasoning of the Seventh and Eleventh Circuits, as set forth in Cohen v. American Sec. Ins. Co., 735 F.3d 601 (7th Cir. 2013) and Feaz v. Wells Fargo Bank, N.A., 745 F.3d 1098 (11th Cir. 2014). See, e.g., ASIC Reply at 7 ("The Reasoning of *Cohen* and *Feaz* Is Dispositive").[10] The Cohen court addressed a similar putative class action, which alleged that a loan servicer had force-placed hazard insurance on plaintiff's property pursuant to lucrative and exclusive kickback arrangements with ASIC. 735 F.3d at 603. In affirming the district court's dismissal of plaintiff's claims, the court found that the use of the "pejorative term 'kickback' [was] not meaningful," since the essence of a kickback is the presence of divided loyalties. 735 F.3d at 611 (citing a decision of the Illinois Appellate Court). Because plaintiff's loan agreement made clear that FPI policies were for the benefit of the lender, and not the borrower, divided loyalties did not exist and the kickback theory failed. Id. The Feaz court accepted Cohen's definition of "kickback" wholesale, and affirmed dismissal of claims related to force-placed flood insurance. 745 F.3d at 1110-1111.

The Court declines to follow Cohen and Feaz. Even if this Court were to accept the definition of "kickback" adopted by those courts—which the Court does not do at this juncture—such merits-based arguments are more appropriately resolved on a motion for summary judgment.

---

[10] To a lesser extent, defendants rely on Anapoell v. American Exp. Business Finance Corp., 2008 WL 2225894 (10th Cir. 2009). See, e.g. Ocwen Mot. Dism. 9-10. Anapoell involved lender placed insurance on leased medical equipment, and the terms of the contract at issue there were substantially different than the one at issue here. 2008 WL 2225894, at *1-2 (contract did not limit lessor's discretion to force-place insurance). Accordingly, the Court does not find the reasoning in Anapoell particularly relevant to the instant action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

### 4.    The <u>Wahl</u> Settlement

Defendant ASIC argues that plaintiff's claims against it must be dismissed as a matter of law because they are completely barred by the <u>Wahl</u> settlement.[11]  ASIC Mot. Dism. 13.  In 2011, plaintiff Michelle Wahl, on behalf of a class of approximately 640,000 current and former California homeowners who obtained FPI policies from ASIC during the period January 28, 2004 through June 2, 2011, settled and released their claims against ASIC.  <u>Id.</u>  <u>See</u> <u>Wahl v. Am. Sec. Ins. Co.</u>, 2009 WL 1766620 (N.D. Cal. June 18, 2009).  Specifically, ASIC argues that the settlement release "covered any and all past, present, or future claims that plaintiff may have had against ASIC *for the LPI hazard insurance policies at issue* in this action through June 2, 2011."  <u>Id.</u> 14 (emphasis in original).  ASIC clarifies that "[t]he *Wahl* case centered on the applicability of the Lender Poss Payable Endorsement ("LLPE")," and argues that plaintiff's claims are barred since plaintiff explicitly alleges that ASIC's FPI  coverage was unnecessary because the lender's interest in the property was already covered by an LLPE.  <u>Id.</u> 14, n.6.[12]

ASIC requests that the Court take judicial notice of the Final Judgment and Order approving the <u>Wahl</u> settlement, ASIC RJN Ex. A, and directs the Court to the analysis set

---

[11]  Saxon and Deutsche Bank incorporate by reference ASIC's arguments related to the <u>Wahl</u> settlement.  Deutsche Bank Mot. Dism. 12; Saxon Mot. Dism. 7.

[12]  Plaintiff did not address ASIC's <u>Wahl</u> settlement arguments in his opposition. <u>See</u> Opp'n ASIC Mot. Dism.  However, in plaintiff's opposition to Deutsche Bank's motion to dismiss, plaintiff asserted that "[a]lthough Deutsche Bank argues that the *Wahl* settlement precludes Valdez's claims, at best, this is only so for claims accruing on or before June 2, 2011 and therefore does not bar all of Valdez's claims."  Opp'n Deutsche Bank Mot. Dism. at 15.  Based on this statement, ASIC argues that plaintiff "implicitly concedes" that his claims are barred, and in any event, since plaintiff has failed to respond directly to ASIC's arguments, the Court should exercise its discretion to dismiss plaintiff's complaint pursuant to Local Rule 7-12.  ASIC Reply 1-2.  The Court does not read plaintiff's statement as an implicit concession and declines to dismiss this action based on any alleged non-compliance with a Local Rule.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

forth in <u>McNeary-Calloway v. J.P. Morgan Chase Bank, N.A.</u>, 863 F. Supp. 2d 928 (N.D. Cal. 2012).[13]

In <u>McNeary-Calloway</u>, plaintiffs also challenged the practice of purchasing FPI policies for home mortgage borrowers who failed to maintain adequate hazard insurance. 863 F. Supp. 2d 928, 934. Applying the Ninth Circuit's "identical factual predicate" standard to interpret the <u>Wahl</u> settlement, the court found that the settlement limited the scope of the plaintiffs' claims. <u>Id.</u> at 948-49. Specifically, the court found that "all of the California non-opt-out Plaintiffs' claims arising out of FPI polices that were placed with ASIC . . . which overlapped, or cancelled, the LLPE period, are barred by the settlement." <u>Id.</u> at 951. On the other hand, the court found that claims "arising out of the force-placement of policies that did not overlap with, or cancel, LLPE coverage, are not predicated on the same set of facts as the claims of the <em>Wahl</em> plaintiff, and therefore were not released by the <em>Wahl</em> settlement." <u>Id.</u> at 952. However, the court then

> decline[d] to rule at this stage of the case on the issue of whether the California non-opt-out Plaintiffs' . . . claims are barred based on this interpretation of the settlement. That decision will depend on, <em>inter alia,</em> whether the policies purchased by Plaintiffs before FPI included LLPE coverage, and when that coverage lapsed. The parties did not brief these issues in any detail, and it is best left for summary judgment, where the Court will have before it a fully developed factual record.

<u>Id.</u> at 952.

The Court agrees with the reasoning of the <u>McNeary-Calloway</u> court and finds that this issue is better left for summary judgment. Moreover, although defendant is correct that plaintiff alleges that FPI policies were unnecessary because the lender's interest was already protected by an LLPE, Compl. ¶¶ 67, 249, plaintiff also alleges that the policies were unnecessary because—among other reasons—they were purchased "for periods of time during which the lender or servicer knew or easily could have known that no loss occurred." <u>Id.</u> Construing the allegations in the complaint in the light most favorable to

---

[13] As discussed <em>supra</em>, the Court may take judicial notice of the Final Order because it is a matter of public record.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|--------------------------|------|---------------------|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

plaintiff, Sprewell, 266 F.3d at 988, the Court declines to find that any of plaintiff's claims are barred by the Wahl settlement at this juncture.

### 5.    Joinder of Cecilia Valdez

ASIC argues, and all defendants agree, that plaintiff's complaint must be dismissed for failure to join an indispensable party, his wife Cecilia Valdez.  ASIC Mot. Dism. 14.[14] ASIC argues that Mrs. Valdez is an indispensable party because plaintiff's complaint, and the exhibits attached thereto, demonstrate that Mrs. Valdez is a co-mortgagor, co-owner, and co-insured.  Id.; Compl. Exs. 15-27.  If Mrs. Valdez is not joined, she could "easily file a second lawsuit . . . [and get] a second bite at the apple."  Id.  Plaintiff responds that, if the Court finds that Mrs. Valdez is an indispensable party, the Court should order her joined, not dismiss the action.

The Court agrees with plaintiff that his failure to join Mrs. Valdez does not compel the Court to dismiss the action.  See United States v. Elfer, 246 F.2d 941, 946 (9th Cir. 1957) (adding or dropping parties to a cause is a matter within the discretion of the trial court).  "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21. Rule 19(a) sets forth the criteria for determining whether a party is required to be joined. If a required party cannot be joined, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. Pro 19(b).[15]

### 6.    RICO Claims

Plaintiff alleges against all defendants violations of RICO sections 1962(c) and 1962(d) predicated on mail and wire fraud, including honest services fraud, as well as

---

[14] Deutsche Bank, Saxon, and Ocwen incorporate ASIC's arguments by reference. Deutsche Bank Mot. Dism. 12; Saxon Mot. Dism. 7; Ocwen Mot. Dism. 3.

[15]  At oral argument, counsel for plaintiff assured the Court that joinder of Mrs. Valdez would be feasible, and that plaintiff would join Mrs. Valdez when he files his amended complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

extortion, attempted extortion, and conspiracy to commit extortion in violation of the Hobbs Act, 18 U.S.C. § 1951(a). Compl. 173-274. Plaintiff alleges that defendants participated in a scheme to defraud plaintiff and class members, "induc[ing] borrowers to pay for loan servicing costs for which Servicing Defendants were separately compensated, and additional amounts disguised as "compensation" that served no bona fide purpose but were designed to funnel kickback payments to Servicing Defendants in exchange for retaining Assurant Specialty Property as Servicing Defendants' exclusive FPI provider." Compl. ¶ 180. The scheme was allegedly accomplished when defendants made "false or fraudulent pretenses, representations and promises." Id. ¶ 84.

Defendants assert that plaintiff's RICO claims suffer myriad deficiencies. Defendants argue that plaintiff has inadequately pleaded the existence of an "enterprise," that plaintiff has not met the heightened pleading standards of Rule 9(b), that the alleged racketeering predicate acts were not fraudulent as a matter of law, that the predicate act of extortion is implausible, and that plaintiff has not alleged an injury in fact.

### a.    RICO Elements

Section 1962, subpart c, makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." The essential elements of a claim premised upon a violation of §1962(c) are thus (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity. Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010).

"In order to 'participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' one must have some part in directing those affairs." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) (quoting 18 U.S.C. § 1962(c)). Racketeering activity is defined to include a number of predicate acts, including mail and wire fraud. 18 U.S.C. § 1961(1). Mail fraud, in turn, requires proof that a defendant (1) formed a scheme to defraud, (2) used the mails in furtherance of that scheme, and (3) "did so with the specific intent to deceive or defraud." Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004).

Under section 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962," can bring a claim for damages. The "by reason of"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

language requires a plaintiff to prove "but-for" causation, proximate causation, and a concrete financial loss to a protectable business or property interest. <u>Hemi Group, LLC v. City of New York, N.Y.</u>, 559 U.S. 1 (2010). Plaintiff must plead all of the required elements to survive a motion to dismiss the RICO claim.

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [Section 19620," 18 U.S.C. § 1962(d). "To establish a violation of Section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." <u>Howard v. America Online, Inc.</u>, 208 F.3d 741, 751 (9th Cir. 2000). The defendants "must also have been 'aware of the essential nature and scope of the enterprise and intended to participate in it.'" <u>Id.</u> (quoting <u>Baumer v. Pachl</u>, 8 F.3d 1341, 1346 (9th Cir.1993)). Liability under section 1962(d) requires that the defendant "knowingly agreed to facilitate a scheme which includes the operation or management of a RICO enterprise." <u>United States v. Fernandez</u>, 388 F.3d 1199, 1230 (9th Cir. 2004). At the pleading stage, a plaintiff claiming a RICO conspiracy must allege that the defendant knew about and agreed to facilitate conduct that violated RICO. <u>See</u> <u>United States v. Fiander</u>, 547 F.3d 1036, 1041 (9th Cir. 2008) (citing <u>Salinas v. United States</u>, 522 U.S. 52, 66 (1997)). "Bare allegations" are not enough if they provide no basis to infer assent to contribute to a common enterprise. <u>Arch Ins. Co. v. Allegiant Prof'l Bus. Servs., Inc.</u>, 2012 WL 1400302 (C.D. Cal. Apr. 23, 2012).

### i.      Enterprise

First, the Court agrees with defendants Saxon and Ocwen that plaintiff has not adequately alleged that either defendant "directed" the affairs of the alleged enterprise. Saxon Mot. Dism. 18; Ocwen Mot. Dism. 15. <u>See</u> <u>Reeves</u>, 507 U.S. at 179. Plaintiff does not appear to contest the absence of these allegations.

### ii.      Racketeering Activity

With regard to the racketeering activity, the Court declines to find that, as a matter of law, the communications allegedly sent by defendants via mail to plaintiff and other borrowers were "not reasonably calculated to deceive." Saxon Mot. Dism. 20; Ocwen

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|--------------------|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

Mot. Dism. 17; ASIC Mot. Dism. 17-18; Deutsche Bank Mot. Dism.  See Cannon, 2014 WL 324556, *3 (N.D. Cal. Jan. 29, 2014) ("A borrower who is told that the high premium includes a kickback . . .  may be unwilling to pay for force-placed insurance that he otherwise might, especially if he believed the premiums were high partly due to bona fide earned 'commissions.'").  Defendants assert that the representations at issue in Cannon II are materially distinct from the representations at issue here, because unlike the letters in Cannon II, the letters sent by defendants to plaintiff did not contain the word "commission." See e.g. Saxon Reply 13.  The Court is unpersuaded.  Just as a "commission" implies services were performed, a representation that a sevicer received payments for "reimbursements" also implies that expenses were incurred.

However, the Court finds that plaintiff's allegations of extortion as a predicate act are not plausible as currently plead.  See, e.g. Saxon Mot. Dism. 21.  Plaintiff asserts in conclusory fashion that "Servicing Defendants and Assurant used, and attempted and conspired to use, the actual or threatened fear of foreclosure to induce Plaintiff and the Class to pay the improper charges imposed." Compl. ¶ 204.  Absent factual allegations to support this statement, plaintiff's extortion theory fails.

### iii.    RICO Injury

Similarly, the Court finds that plaintiff has plausibly alleged the existence of RICO injury.  Plaintiff alleges that he was charged for kickbacks built into his FPI premiums, by reason of defendants' scheme to defraud.  Compl.  ¶¶ 210-211.  Moreover, these alleged kickbacks were charged to plaintiff's escrow account, which, as discussed *supra*, necessarily impacted his principal loan balance.  This is sufficient to establish injury to business or property as required for RICO standing and, contrary to defendants' assertions, plaintiff need not plead reliance on defendants' alleged misrepresentations.  Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 640 (2008) ("[A] person can be injured "by reason of" a pattern of mail fraud even if he has not relied on any misrepresentations.").

However, to the extent that plaintiff attempts to rely on "honest services" fraud to establish injury-in-fact, the Court finds that this is precluded as a matter of law.  Cobb v. JPMorgan Chase Bank, N.A., 2013 WL 6201414, at *11 (N.D. Cal. Nov. 27, 2013) ("[T]he deprivation of 'honest services' does not constitute concrete financial loss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

sufficient to establish injury to state a RICO claim.") (quoting United States v. Kincaid–Chauncey, 556 F.3d 923, 941 n.14 (9th Cir. 2009)) (internal quotations and brackets omitted).

### iv.    Rule 9(b) and Group Pleading

Defendants all assert that plaintiff has not met his burden to plead the mail fraud predicate allegations with the particularity required by Rule 9(b).  See, e.g. Deutsche Bank Mot. Dism. 12; Saxon Mot. Dism. 2; ASIC Reply 14.   Specifically, defendants assert that plaintiff's complaint improperly groups together "Servicing Defendants" and does not identify the role of each defendant in the conspiracy.

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . .  and inform each defendant separately of the allegations surrounding  his alleged participation in the fraud. []. In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme."  Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal quotations omitted).

Here, plaintiff has not properly identified the role of each defendant in the alleged fraudulent scheme.  See, e.g. Compl.  ¶¶ 177, 179, 189, 191-92.  However, defendants Ocwen, Saxon, and ASIC overstate the extent to which plaintiff has allegedly failed to plead the "time, place, and specific content of the false representations." Saxon Mot. Dism. 20 (quoting Sanford v. Memberworks,Inc., 625 F.3d 550, 557 (9th Cir. 2010). Paragraphs 85 through 127 of the complaint clearly identify the notices and insurance policies plaintiff received from Ocwen, Saxon, and ASIC, when plaintiff received them, and why the language contained therein was allegedly false or deceptive.

In light of the Rule 9(b) pleading deficiencies, the Court GRANTS without prejudice defendants' motion to dismiss both of plaintiff's RICO claims.[16]

---

[16] The Court grants the motions as to both claims because plaintiff's Section 1962(d) claim is derivative of the Section 1962(c) claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

### v.    RICO Statute of Limitations

Saxon argues that plaintiff's RICO allegations are barred by the statute of limitations, and ASIC and Deutsche Bank join in this argument in their  replies.  Saxon Mot. Dism. 7-8; see generally ASIC Reply Mot. Dism.; Deutsche Bank Mot. Dims. Notably, plaintiff does not respond to this argument.

The statute of limitations for a civil RICO claim is four years.  Agency Holding Corp. v. Malley–Duff & Assocs., Inc., 483 U.S. 143, 156 (1987).  The civil RICO limitation period "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action."  Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996). Given that RICO requires a "pattern" of racketeering, earlier acts of racketeering may fall outside the four-year period.  Under the "separate accrual rule," a new cause of action accrues when new overt acts occur.  Grimmett, 75 F.3d at 513 (9th Cir. 1996).  However, to invoke the separate accrual rule, the new overt act "1) must be a *new and independent act* that is not merely a reaffirmation of a previous act; and 2) It must *inflict new and accumulating injury* on the plaintiff."  Id. (emphasis in original).

Saxon argues that plaintiff should have discovered his injury in April 2010, when plaintiff alleges that Saxon obtained an FPI policy through ASIC at a rate of $3,615. Saxon Mot. Dism.  Accordingly, the statute of limitations began to run on plaintiff's RICO claim in April 2010, and expired four years later in April 2014—a month before plaintiff filed this law suit.  Further, Saxon argues that its purchase of an identical FPI policy in 2011 is not a "new and independent act" sufficient to invoke the separate accrual rule.  Id.  The Court agrees with Saxon.  See Sasser v. Amen, 2001 WL 764953 at *7 N.D. Cal. 2001), aff'd, 57 Fed. App'x 307 (9th Cir. 2003) ("The same injuries resulting from the same policies continuing into the limitations period are not "new and independent" so as to be saved by the separate accrual rule.")

Accordingly, the Court GRANTS Saxon's motion to dismiss plaintiff's RICO claims without prejudice.  The Court GRANTS without prejudice ASIC's motion to dismiss the RICO claims, to the extent that they are predicated on ASIC's relationship with Saxon.  The Court also GRANTS without prejudice  Deutsche Bank's motion to dismiss the RICO claims with prejudice, to the extent that they are predicated on Deutsche Bank's relationship with Saxon.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

### 7.    UCL Claim

California Business and Professions Code Section 17200 prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]."  Section 17200 allows suits "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Id. § 17204.  "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal .App. 4th 1544, 1554 (2007) (quoting Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 647 (1996)).

Plaintiff alleges that defendants violated Section 17200 by, among other things, "assess[ing] excessive, unreasonable, and unnecessary insurance policy premiums against Plaintiff and the Class that were the direct result of kickback and other self-serving arrangements." Compl. ¶ 249.  In plaintiff's several opposition briefs, plaintiff argues that defendants' acts are unlawful, unfair, and fraudulent, and that plaintiff's claim satisfies any one of the three varieties of unfair competition under Section 17200.  See, e.g. Opp'n Saxon Mot. Dism. 19-24.

Plaintiff alleges sufficient facts to proceed under the unfair prong of section 17200.  "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a [Section 17200] consumer action." Rubio v. Capital One Bank, 613 F.3d 1195, 1204–05 (9th Cir. 2010); see also Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007) ("In the absence of further clarification by the California Supreme Court, we endorse the district court's approach to the law as if it still contained a balancing test.").

Plaintiff's allegations satisfy the balancing test used by California courts.  Under that test, an "unfair" business practice occurs when the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." S.Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886 (1999).  In the complaint, plaintiff alleges that defendants' practices "have detrimentally impacted and caused substantial harm to Plaintiff and the Class.  Plaintiff has suffered financial injuries in fact to his business or property as a result of Defendants' conduct." Compl. ¶ 250.  At the motion to dismiss stage, these are sufficient allegations of a practice by Defendants that is "immoral,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**               **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

unethical, oppressive, unscrupulous or substantially injurious to consumers," see S. Bay, 72 Cal.App.4th at 886.  Accordingly, plaintiff has adequately alleged a claim under the unfair prong using the California balancing test.

Because the Court finds that plaintiff has alleged sufficient facts to proceed under the unfair prong, the Court does not address arguments concerning the "unlawful" prong. Moreover, to the extent that plaintiff's UCL claim is predicated on fraud, plaintiff has not met the heightened pleading standard imposed by Rule 9(b), as discussed *supra*.[17]

### a.      UCL Statute of Limitations

Defendants Saxon and Deutsche Bank argue that the UCL claim must be dismissed because it "accrued in 2008 and expired in 2012." see, e.g. Saxon Mot. Dism. 10. Plaintiff counters that defendants do not "show [their] work in calculating [the] purported 2008 accrual date."  Opp'n Saxon 25.

Plaintiff's UCL claim is subject to a four-year statute of limitations.  Cal. Bus. & Prof.Code § 17208.  Under California law, "the limitations period, the period in which a

---

[17] At oral argument, counsel for Ocwen, citing Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581 (2009), asserted that plaintiff's UCL claim must be dismissed because plaintiff has failed to plead that his alleged injury was "reasonably avoidable."  As noted above, California courts disagree as to the proper test for determining whether a practice is "unfair" in the consumer context.  Rubio v. Capital One Bank, 613 F.3d 1195, 1204–05 (9th Cir. 2010).  As noted in the Davis opinion itself, the California Supreme Court has yet to determine the appropriate test for "unfairness," which has led to "a split of authority on this question among the Courts of Appeal."  Davis, 179 Cal. App. 4th 581, 594 (2009).  The Davis court adopted the test referenced by counsel at argument, which requires that the injury not be "reasonably avoidable" by the consumer in order to be unfair.  In light of this split in authority, courts applying California law continue to utilize the unfairness test that the Court applies here.  See, e.g. Bias v. Wells Fargo & Co., 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013).  However, when plaintiff files his amended complaint, he may wish to add allegations sufficient to meet this alternative test for unfairness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

plaintiff must bring suit or be barred, runs from the moment a claim accrues." Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1191 (2013). The "last element" accrual rule provides that absent any equitable exception, a claim accrues upon " the occurrence of the last element essential to the cause of action.'" Id. (internal quotations omitted). In Plumlee v. Pfizer, Inc., 2014 WL 695024 (N.D. Cal. Feb. 21, 2014), a case relied on by defendants, plaintiff sued Pfizer for alleged misrepresentations in connection to their marketing of the drug Zoloft. The court found that plaintiff's UCL claim accrued upon her last purchase of Zoloft. Id. *7.

Here, plaintiff alleges that the last time Saxon force-placed insurance on his property was January 10, 2011. Compl. ¶ 98. Further, plaintiff alleges that Deutsche Bank is the current lender-in-interest on his mortgage. Id. ¶ 28. Thus, following the reasoning of the Plumlee court, plaintiff's UCL claim against Saxon accrued in January 2011, and expires in January 2015. Similarly, it appears that Deutsche Bank was involved in issuing FPI policies on plaintiff's property through 2013. Accordingly, Plaintiff's UCL claim against Saxon and Deutsche Bank are not time-barred.

In accordance with the foregoing, the Court DENIES all defendants' motions to dismiss plaintiff's UCL claim.

###     8.     Breach of Contract / Implied Covenant of Good Faith and Fair Dealing

Plaintiff asserts a claim for breach of contract, including breach of the implied covenant of good faith and fair dealing, against Saxon, Ocwen, and Deutsche Bank. Plaintiff argues that these defendants were "contractually obligated to service the loans of plaintiff and the members of the Class pursuant to the terms of their mortgage agreements." Compl. ¶ 257. Further, the complaint alleges that to the extent that the mortgage agreement granted these defendants discretion to select FPI policies, the implied covenant of good faith and fair dealing obligated them to exercise that discretion reasonably. Compl. ¶ 259. Plaintiff argues that defendants breached this covenant—and thus, the contract itself—by, among other things, "[f]ailing to seek competitively priced insurance on the open market and instead selecting FPI providers according to pre-arranged secret deals, accompanied by kickbacks and other improper compensation,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

whereby the insurance policies were continually purchased through the same companies." Id.

Saxon and Deutsche Bank argue that plaintiff's contract claim is barred by the statute of limitations.  See, e.g. Saxon Mot. Dism. 8.  Saxon and Ocwen argue that the plain language of the agreement permitted them to obtain the disputed FPI premiums.  See, e.g., Ocwen Mot. Dism. 19-21.  Finally, Saxon asserts it was never a party to the mortgage agreement.  Saxon Mot. Dism. 8.

### a.    Saxon and Deutsche Bank

First, the Court finds that, as currently pleaded, the breach of contract claims are time barred as to defendants Saxon and Deutsche Bank.  In California, the statute of limitations for contract claims is four years. Cal.Code Civ. Proc. § 337(1).[18]  Plaintiff does not argue that his contract claim was tolled.  Thus, if the breach occurred in April 2010, the claim expired in April 2014.  Because the complaint was filed in May 2014, plaintiff's claims are time barred as to Saxon and Deutsche Bank as currently pleaded.

Accordingly, the Court GRANTS without prejudice Saxon and Deutsche Bank's motions to dismiss plaintiff's contract claim.

### b.    Ocwen

The Court finds that plaintiff has stated a claim for breach of contract against Ocwen.  Ocwen's arguments that it has not breached the contract by purchasing FPI miss the mark.  Plaintiff does not dispute Ocwen's right to buy FPI under the mortgage agreement.  Rather, plaintiff contests the manner in which Ocwen exercised its discretion to do so.  An abuse of that discretion may violate both the implied covenant of good faith and fair dealing, as well as the "reasonable or appropriate" language contained in section 9, the limiting provision, of the mortgage agreement.  Compl. ¶ 72.

Accordingly, the Court DENIES Ocwen's motion to dismiss plaintiff's contract claim.

---

[18] Plaintiff's implied covenant claim is part of his contract claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

**10.     Unjust Enrichment/Disgorgement**

Plaintiff asserts a claim for unjust enrichment/disgorgement against ASIC and, as an alternative to the contract claim, against Ocwen, Deutsche Bank, and Saxon. Compl. ¶ 275.

Under California law, "[t]here is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust." McKell v. Wash. Mut. Inc., 142 Cal.App.4th 1457, 1490, (2006). Since plaintiff seeks restitution, see Compl. ¶ 278, the Court construes plaintiff's unjust enrichment claim as a claim for restitution. "Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another." Ghirardo v. Antonioli, 14 Cal. 4th 39, 51, 57 (1996). "A person is enriched if he receives a benefit at another's expense." Id. However, "[e]ven when a person has received a benefit from another, he is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." Id. (internal quotation marks and citation omitted).

With regard to ASIC, plaintiff implicitly alleges that he does not have a contract with ASIC. Compl. ¶ 135 ("Plaintiff alleges this claim against Assurant and as an alternative claim against Servicing Defendants to the extent that any contracts do not govern the entirety of the dispute with Servicing Defendants."). Plaintiff further alleges that (1) ASIC was enriched by "obtaining the exclusive FPI business of Servicing Defendants pursuant to secret dealing" and (2) it would be unjust for ASIC to retain the monies earned pursuant to that secret dealing. Id. ¶¶ 275-278. The Court finds that the allegations against ASIC are sufficient to state a claim under California law. See Vitek v. Bank of Am., N.A., 2014 WL 1042397 (C.D. Cal. Jan. 23, 2014) (finding the same based on similar allegations).

Accordingly, the Court DENIES ASIC's motion to dismiss plaintiff's claim for unjust enrichment.

With regard to Saxon, the Court finds that the unjust enrichment claim is time barred. Plaintiff's unjust enrichment claim is subject to either a two-year or three- year

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|----------|-------------------------|------|--------------------|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

statute of limitations.  Compare Gustafson, 2012 WL 7071488, at *11 (C.D. Cal. Dec. 26, 2012) (applying two-year statute of limitations under Cal. Civ. Proc. Code § 339) with Allen v. Similasan Corp., 2013 WL 2120825, at *6 (S.D. Cal. May 14, 2013) (applying three-year statute of limitation under Cal. Civ. Proc. Code § 338).  The Court need not decide this issue, however, because the complaint alleges that the last time Saxon purchased FPI on plaintiff's behalf was on or about January 22, 2011. Compl. ¶ 97.  The Complaint was not filed until May 9, 2014, more than three years later.

Accordingly, plaintiff's claim falls outside the three year statute of limitations and the Court GRANTS without prejudice Saxon's motion to dismiss the unjust enrichment claim.

With regard to Ocwen and Deutsche Bank, the Court finds that the unjust enrichment claim is precluded by the existence of a valid, enforceable contract—the mortgage agreement—and the Court thus GRANTS without prejudice Ocwen and Deutsche Bank's motions to dismiss the unjust enrichment claims.  See Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) (affirming dismissal where dispute was covered by enforceable written contracts).

## 11.    TILA Claim

Plaintiff alleges that Deutsche Bank violated two provisions of Regulation Z ("Reg. Z"), TILA's implementing Regulation: (1) 12 C.F.R. § 226.17(c), and (2) 12 C.F.R. § 226.18(d). Compl. ¶¶ 232, 234.  Plaintiff appears to argue that Deutsche Bank violated 12 C.F.R. § 226.17(c) by "misrepresenting to Plaintiff and the Class that FPI would only be obtained in the amount 'necessary to protect the value of the Property and Lender's rights in the Property,' and Plaintiff's mortgage does not authorize kickbacks or other compensation to Deutsche Bank or its affiliates or subsidiaries for purchasing FPI." Compl. ¶ 230.  Similarly, plaintiff appears to argue that Deutsche Bank violated 12 C.F.R. section 226.18(d) by "fail[ing] to disclose the nature and amount of all finance charges associated with the FPI premiums it withdrew from Plaintiff's escrow account and/or added to their principal balance." Id. ¶ 234.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

As a preliminary matter, Deutsche Bank argues that plaintiff has failed to adequately allege that Deutsche Bank was a "creditor" or "assignee" of a creditor, as required for the imposition of civil liability under TILA. Deutsche Bank Mot. Dism. 2-5. Deutsche Bank also argues that plaintiff's claim's are barred by TILA's one year statute of limitations, and that plaintiff has failed to set forth facts sufficient to support equitable tolling of the statute. Id. 6-7. The Court agrees. Plaintiff alleges in conclusory fashion that Deutsche Bank was a "creditor" or, alternatively, an "assignee." Compl. ¶ 228. With regard to the statute of limitations, it is unclear from plaintiff's complaint which of Deutsche Bank's disclosures were allegedly inadequate, let alone when those disclosures were made by Deutsche Bank. Id. ¶ 229-236. Accordingly, the Court GRANTS without prejudice Deutsche Bank's motion to dismiss plaintiff's TILA claim.

### 12.    Declaratory and Injunctive Relief

Plaintiff alleges that, on each claim, "Plaintiff and the Class will be irreparably injured in the future by Defendants' misconduct." Compl. ¶ 280. Plaintiff requests a judgment declaring, among other things, that "Defendants must cease the activities described herein . . . and provide for adequate procedures and policies to ensure that Defendants' unlawful conduct does not continue." Id. ¶ 281. Defendants argue that these claims should be dismissed as both duplicative and moot. See, e.g. Saxon Mot. Dism. 15-25.

Plaintiff's claim for Declaratory and Injunctive Relief is expressly predicated on defendants' liability for "each cause of action stated above." Compl. ¶ 280. Accordingly, to the extent that plaintiff's predicate claims against defendants have not been dismissed, the Court DENIES defendants' motions to dismiss the claim for injunctive and declaratory relief. Plaintiff shall have leave to amend his claim for injunctive and declaratory relief in a manner consistent with this opinion.

## V.    CONCLUSION

For the foregoing reasons, the Court DENIES ASIC and Saxon's motion to sever plaintiff's claims. The Court GRANTS in part and DENIES in part defendants' motions to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-03595-CAS(MANx) | Date | September 29, 2014 |
|---|---|---|---|
| Title | SHANE VALDEZ V. SAXON MORTGAGE SERVICES, INC. ET AL. | | |

Specifically, the Court GRANTS without prejudice defendants' motions to dismiss plaintiffs RICO claims.  The Court DENIES defendants' motions to dismiss plaintiff's UCL claim.  The Court GRANTS without prejudice Saxon and Deutsche Bank's motions to dismiss plaintiff's contract claim.  The Court DENIES Ocwen's motion to dismiss plaintiff's contract claim.  The Court DENIES ASIC's motion to dismiss plaintiff's claim fro unjust enrichment.  The Court GRANTS without prejudice Saxon, Deutsche Bank, and Ocwen's motions to dismiss the unjust enrichment claim.  The Court GRANTS without prejudice Deutsche Bank's motion to dismiss plaintiff's TILA claim.  And the Court DENIES defendants' motions to dismiss the claim for injunctive and declaratory relief.

Plaintiff may file an amended complaint consistent with this Order no later than **October 28, 2014.**

IT IS SO ORDERED.

|  | 00 | : | 25 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |